# Gafford *et al.* v Speaker.

*Bill in Equity to Remove Cloud from Title.*

1. *Husband and wife; surety for husband's debt; burden of proof upon wife seeking to avoid conveyance.*—Where a mortgage upon the separate property of a married woman, which shows upon its face that it was made to secure a debt due to the mortgagee by the married woman, as principal and not as surety for her husband, is sought to be avoided and annulled by the wife although she admits the execution of the mortgage, upon the ground that she executed it and the note which it was given to secure as surety for her husband, the burden of proving that the debt secured by the mortgage was the debt of her husband and that she was his surety in the execution of the instrument, is upon the wife.

2. *Same; same; sufficiency of evidence.*—Where a married woman seeks to avoid and have annulled a mortgage which shows upon its face that it was given to secure her debt, upon the ground that she joined in the execution of the mortgage with her husband as his surety, to authorize the relief sought, the proof must be clear and convincing, in order to overcome the adverse inference indulged against her on account of the recitals of said mortgage; and in determining the sufficiency and weight of the evidence it is proper to consider her acts and conduct subsequent to the execution of the mortgage assailed, inconsistent with her testimony impeaching the validity of the instrument.

[Gafford *et al.* v. Speaker.]

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by Bertha Speaker, a married woman, on June 28, 1898, for the purpose of having a certain mortgage and deed cancelled as a cloud upon her title to lands specifically described in the complaint. It is averred in the bill that the complainant was the owner of the real estate in controversy, as her separate estate, having purchased the same from one S. A. Dupuy in 1886. It was further averred in the bill that on May 27, 1896, the complainant, as surety for her husband, Anton Speaker, joined him in the execution of a note for $2,310 to one E. B. Keeling, and that to secure the payment of said note she executed, together with her husband, as his surety, a mortgage to said E. B. Keeling, upon the said real estate in controversy, which was her separate estate. That said Keeling foreclosed the mortgage under the power of sale contained therein, and that at the sale one Kalford Kreth purchased the property, and that after such purchase the said Kreth sold and transferred the property to Minnie B. Gafford, the wife of F. H. Gafford. That after the purchase by Minnie B. Gafford of said lands, she demanded of the complainant a surrender of the possession thereof. It was then alleged that the mortgage to Keeling was a cloud upon her title, and that at the time of the filing of the bill she was in possession of the property in controversy.

The prayer of the bill was that the mortgage executed to E. B. Keeling be cancelled as a cloud upon the title of complaint, and that whatever right, title or claim may be held by Minnie B. Gafford or Frank H. Gafford, or Kalford Kreth by virtue of such mortgage, be declared null and of no effect as against the complainant. Minnie B. Gafford, Frank H. Gafford, Kalford Kreth, E. B. Keeling and Anton Speaker were made parties to the bill.

The answer of M. B. and F. H. Gafford denies that the debt to said E. B. Keeling was the debt of Anton Speaker and alleges that it was the debt of complainant, and denies that she acted or executed said note and mort-

gage to E. B. Keeling as surety for her said husband, and alleges that after the purchase of the property by Kreth, the complainant and her husband attorned to said Kreth by a written contract and by paying rents to him until Gafford purchased the property. F. H. Gafford denies that he has any interest in the property. M. B. Gafford alleges specifically in a special plea, as an amendment to her answer, that she is the owner of the property described in the bill, having purchased the same from Kalford Kreth on the 18th day of June, 1898, received a warranty deed and paid in cash $1,800 for the same, and alleges that she did not know of any claim of complainant. M. B. Gafford also in her special plea sets up specifically that she is a purchaser for value, and without notice of this property, having paid $1,800 in cash for the same, taking a warranty deed from said Kreth, and had no notice of any equity or claim of appellee thereto, and knew of no fact calculated to put her on inquiry as to any equity of complainant. The sufficiency of this plea was not questioned.

Kalford Kreth answered, denying all the material allegations in the bill; and for a second defense alleged affirmatively that on the 20th day of June, 1891, complainant applied to him for a loan of $2,000, upon the security of a mortgage upon the lands described in the bill, for the purpose of paying off a mortgage on the same property to one Thomas of $2,000 which he granted to her, upon complainant executing a mortgage on the same property; her husband joining in the note and mortgage; that he, Kreth sold said mortgage and note to E. B. Keeling, and that upon said Keeling refusing to allow a further extension of the time in the payment of said note, complainant renewed the said note and mortgage to E. B. Keeling, a copy of which is attached to the bill of complaint, and thereupon Kreth entered satisfaction of his mortgage upon the records, and that was the sole consideration for said note and mortgage to said E. B. Keeling. Kreth further sets up by special plea the tenancy of complainant and her occupancy of the premises as his tenant, from the 1st day of April, 1897, until the 30th day of June, 1898, as an estoppel to deny his title as

such landlord; and for a further defense, by special plea, Kreth denies that at the time of making the loan to complainant he had any notice that she had executed the note and mortgage to him as surety for her husband, and also a want of notice of the same at the time he purchased at the mortgage sale by Emma T. Keeling, as transferee of E. B. Keeling, and alleges that appellee is estopped to say that she was security for her husband. The sufficiency of these two pleas was not questioned. The evidence as adduced upon the hearing is sufficiently stated in the opinion.

Upon the final submission of the cause on the pleadings and proof, the chancellor rendered a decree declaring that the complainant was entitled to the relief prayer for and ordered accordingly. From this decree the defendants appeal, and assign the rendition thereof as error.

JOHN H. MILLER, ALEX T. LONDON and SAMUEL WILDER, for appellant.—It cannot be denied, under the facts in this case, that the complainant and her husband attorned to Kalford Kreth and that rents were paid him for about sixteen months, and that complainant and her husband had never surrendered possession to their landlord, Kreth, before complainant called said Kreth and his vendee (Gafford) into a court of equity and questioned their right and title to said property and to its possession. A tenant cannot repudiate the tenancy without surrendering possession.—*Robinnson v. Holt,* 90 Ala. 115; *Howard v. Jones,* 26 So. Rep. (Ala.) 129; *Barlow v. Dahm,* 97 Ala. 414.

A married woman may make her husband her agent.—*Warren v. Wagner,* 75 Ala. 202; *Louisville Coffin Company v. Stokes,* 78 Ala. 374. A *bona fide* purchaser is protected against wife's equity.—*Osborne v. Cooper,* 113 Ala. 405; *Scott v. Tuul,* 115 Ala. 529.

In law or equity, where defendant files a plea averring facts in bar of the relief sought, the bill should be dismissed as to the defendant filing the plea.—*Tyson et al v. Decatur Land Company,* 26 So. Rep. (Ala.) 507; *Hughes v. Blake,* 6 Wheat. 453; *Bogardus v. Trinity,*

[Gafford *et al.* v. Speaker.]

*Church*, 4 Paige 178; 1 Beach Mod. Equity Practice, § 239; 6 Am. & Eng. Encyc. of Law, 804; *Forrest v. Robinson*, 2 Ala. 215; *Mortgage Co. v. Dykes*, 111 Ala. 178; *Winter & Loeb v. Pool*, 100 Ala. 503-6; *Taylor v. Smith*, 104 Ala. 538; *Richardson v. Stephens*, 114 Ala. 238.

The complainant, therefore, was barred by her own acts from claiming this property as against Kalford Kreth or his vendee, M. B. Gafford.—2 Herman on Estoppel and Res. Ad., 853; *Martin v. Martin*, 22 Ala. 104; *Drake and wife v. Glover*, 30 Ala. 382; 2 Herman on Estoppel, 729, 828; *Jones v. Langdon*, Croke's Ellis, 37; *McNamee v. Moseland*, 26 Iowa 96; *First Nat. Bank v. Nelson*, 106 Ala. 535; *Scott v. Taul*, 115 Ala. 531; *Osborne v. Cooper*, 113 Ala. 405; *Thompson v. Stringfellow et al.* 24 So. Rep. (Ala.) 849; *Thompson v. First Nat. Bank of Anniston*, 24 So. Rep. (Ala.), 1005.

DENSON & TANNER, *contra.*—The proof shows that the debt for which the mortgage was given to secure, was that of the husband, Anton Speaker, and the wife signed the note and executed the mortgage, merely as a surety for the husband's debt. There is no dispute that the land was and is the separate estate of the wife. Such a mortgage and transaction is absolutely null and void, under the laws of Alabama.—*Richardson v. Stephens*, 25 So. Rep. 39. It is undisputed law, "All persons must take notice of the legal disabilities of a married woman, and deal with her at the peril of ascertaining that the legal conditions exist which relieve her of them."—*Troy Fertilizer Co. v. Zachary*, 114 Ala. 183.

The evidence shows no ratification or estoppel against Mrs. Speaker. But this doctrine does not apply in this case. A transaction made void by statute is incapable of ratification or working an estoppel, and cannot divest title.—*Richardson v. Stephens*, 25 So. Rep. 39, 40, 41; *Merriam v. R. R.*, 117 Mass. 241, 244; *Swann et al. v. Miller*, 82 Ala. 530, 533, 540; *Petitt v. Petitt*, 32 Ala. 289, 308; *Stephens v. Smith*, 10 Wall. 321, 327; *Frederick v. Gray*, 12 Kan. 518, 523; *Ashford v. Watkins*, 70 Ala.

163; *Standifer v. Swann et al.*, 78 Ala. 88, 93, 98; *Robertson v. Hayes*, 83 Ala. 290; 2 Herman on Estoppel, § 581; *Harden v. Darwin, et al.*, 77 Ala. 481; *Vincent v. Walker*, 93 Ala. 165, 168, 169. There are numerous cases and none to the contrary, that hold, "No sale made in violation of law can be said to be *bona fide.*"—*Swann v. Miller*, 82 Ala. 540; *McCall v. Rogers*, 77 Ala. 349, 352; *Wailes & Co. v. Couch*, 75 Ala. 134.

The transaction in this case being forbidden by statute, is void; it created no legal or equitable charge upon her estate, and the note imposing no personal liability or obligation upon Mrs. Speaker, is void, will not support a subsequent promise and is incapable of ratification, as ratification would be held to accomplish what the statute declares the mortgage shall not do. All subsequent mortgages and the lease are void, and conferred no rights upon any one as against Mrs. Speaker. *Thompson v. Hudgins*, 116 Ala. 96; *Stout v. Kinsey*, 90 Ala. 546; *Clements v. Draper*, 108 Ala. 211; *Lowell v. Daniels*, 2 Gray, 161; *Pierce v. Chase*, 108 Mass. 254.

TYSON, J.—The bill in this cause was filed for the purpose of having certain conveyances cancelled as a cloud upon the title of complainant to the land described in the bill. Her right to do so depends, in a large measure, upon whether she has established by the evidence that the debt secured by certain mortgages executed by her and her husband upon the land, was her debt or the debt of her husband. The bill alleges that on the 27th day of May, 1896, she joined her husband, as his security, in the execution of a note and mortgage for $2,310, upon the land to one Keeling; that on the 25th day of March, 1897, Keeling sold the land under the power of sale in his mortgage, to Kreth, who sold the land to the Gaffords.

It cannot be doubted that if the mortgage to Keeling was given wholly as security for a debt of the complainant's husband, it is void as contravening the express inhibition of the statute.—Code, § 2529; *Richardson v. Stephens*, 122 Ala. 301; *Price v. Cooper*, 123 Ala. 392. And the burden of proving this affirmative issue, as

tendered by the allegation of the bill is upon the complainant. Has she done so? There is no dispute but that the land attempted to be conveyed by the mortgage was her property. It is also without dispute that this was all the property she owned and that her husband was insolvent and owned no property. It was further without dispute that the mortgage to Keeling was given to satisfy and discharge a former mortgage executed by the complainant and her husband to Kreth on the 20th day of June, 1891, and which had been transferred by Kreth to him for a valuable consideration paid. The loan made by Kreth was negotiated by one Adams as the agent of the complainant. Adams was applied to and employed by the husband of the complainant as her agent. The mortgage to Kreth shows upon its face to be made to secure a debt due to him by the complainant as principal, and not as security for her husband. The execution of this mortgage is admitted by the complainant, both in her pleadings and testimony. She swears, however, that the debt secured by it was the debt of her husband, and this she knew because she owed nothing on her property; that she paid Dupuy $2,500 for it which she derived from a sale of her property on the South Highlands; that she knew that the $2,000 secured by this mortgage was used by her husband to pay his debts; that she received no benefit from it and that it was borrowed for the purpose of paying his debts. This is in substance all of her testimony on direct examination. Her husband swears that the $2,000 was borrowed for himself and used by him in his business; that his wife executed the mortgage as his security; that she did not authorize him or anyone else to borrow the money for her; that the Keeling mortgage was to take up the Kreth mortgage; that his wife got the money which she paid for this property from a sale she made of other property. This, in substance, is all of his testimony upon direct examination. It is, in fact, all the testimony upon which complainant relies to establish that the debt was the debt of her husband and not hers. It is needless to say that they are both interested in the result of this suit and that their testimony must be

weighed in the light of that interest. One would suppose from this testimony that all the complainant did or had to do with the transaction was to execute the note and mortgage at the request of her husband; yet, the evidence discloses that Kreth drew his check for the $2,000 on the American National Bank, payable to the order of the complainant and her husband and delivered it to Adams, the agent who negotiated the loan for her. That Adams delivered this check to her and her husband, which they indorsed, and that she and her husband went to the bank and drew the money on it.

But this is not all. One would also conclude from this testimony that the complainant paid the cash to Dupuy when she purchased the property of him, and yet, the record discloses that she gave to him a mortgage upon it to secure two notes, one for $500, payable September 1, 1886, and the other for $1,250, May 13, 1886; the date of this mortgage being the same as that of the date of the deed of Dupuy to her, to-wit, May 13, 1886. This mortgage was satisfied of record on the 20th of June, 1886. How it was paid, we are not informed by either of these witnesses. But the inference is irresistible that the larger portion of the debt secured by it was paid out of the proceeds of a check drawn by M. C. Thomas on the First National Bank of Birmingham to the order of the complainant, of date May 13, 1886, indorsed by her and paid by the bank on the 14th, and this may, in a measure, account for the mortgage given by the complainant to Thomas on this property for $2,000, of date February 15,. 1890, and which remained unsatisfied of record until June, 25, 1898; and also account for the check given by him payable to her order for $762.75, of date February 15, 1890, and indorsed "Mrs. Bertha Speaker, per A. Speaker," all of which the complainant professed to know so little about. In addition to the recitals in the Kreth mortgage showing the debt it was made to secure was the debt of the complainant, there are also recitals in the mortgage to Keeling showing, at least, that the debt secured by it was a joint debt of hers and her husband. and in the lease contract which she made with Kreth, after his purchase at the mortgage

sale, for the rental of this property, she recognized his title to it, and of necessity the validity of the Keeling mortgage. The recitals in these instruments, the execution of which is not denied by her, made at a time when the transactions to which they relate were being had—admissions solemnly made in writing, recognizing the validity of the mortgages executed by her—tend strongly to show that the debt secured by the mortgages was hers, not that of her husband, and are certainly confirmatory of the acts of her husband and Adams, who acted for her in negotiating and procuring the loan from Kreth.

In treating of the subsequent acts and conduct of the complainant and in giving force to them as evidential facts, we do not do so upon any assumption that she is bound by them on the principle of ratification by her of having become the surety for her husband. For if it be true that the debt was not hers, but her husband's, the mortgage securing it being absolutely void, she could not be held to a ratification of it.—*Pettit's Admr.* v. *Pettit's Distributees,* 32 Ala. 288; *Butler* v. *Lee,* 11 Ala. 855; *Shipley et al.* v. *Eastwood,* 9 Ala. 198; *Swann* v. *Miller,* 82 Ala. 530. But her acts and conduct subsequent to the execution of the mortgage assailed as invalid, if inconsistent with her testimony impeaching the validity of them on the ground that they were made to secure her husband's debt, may be properly considered for the purpose of determining what credit or weight, if any, should be given her testimony. And this observation is also applicable to the testimony of her husband.

From June, 1891, to May, 1896, nearly five years, the complainant, without complaint, without a protest, and with full knowledge of its existence, permitted Kreth to hold and own a mortgage upon her property, and in May, 1896, executed the Keeling mortgage in renewal and discharge of the Kreth mortgage, which she permitted to remain as an ostensible incumbrance upon her homestead; and more, she permitted, without a word of objection, her land to be sold at public sale and to be bought by Kreth, and then to become his tenant for six-

[Gafford *et al.* v. Speaker.]

.teen months. It was not until after Kreth had sold the lands to Mrs. Gafford on the 18th day of June, 1898, .and possession was demanded of her, that she asserted the invalidity of the mortgages, more than seven years .after the debt was contracted which she now assails.

It would seem that what we have said would be suffi-.cient to warrant the conclusion that the complainant has failed to establish by that clear and convincing proof which she would be required to produce in order to over-.come the adverse inference to be indulged against her .on account of her acts and conduct, evidenced by solemn writings and otherwise, recognizing the validity of these .mortgages. But there is other testimony in the record .tending strongly to show that the testimony of herself and husband is not entitled to that probative force which .should characterize. the proof in such cases. Adams, the broker and agent for the complainant to negotiate .the loan, testified that he was informed that the loan was for the purpose of paying off a mortgage on the property for $2,000, held by M. C. Thomas of Tuscaloosa; that complainant and her husband executed and deliv-.ered to him the note and mortgage to Kreth which he .forwarded to Kreth. That Kreth required real estate as security for the loan. That he knew before he was approached by her husband to negotiate the loan, that complainant owned the property, but that he required the complainant to furnish an abstract of title, which he had an attorney to examine and give an opinion as to the ownership of the property, which abstract and .opinion he produced and was introduced in evidence and is in the record. That he drew the note secured by the mortgage and that complainant was the principal on said note. That her husband signed the note and mort-.gage simply to give his consent for his wife to make the .contract. It was understood that the loan, and in fact the loan was made to the complainant alone.

. Kreth testified that the loan was negotiated through Adams; that he demanded as security a mortgage on real estate, as he makes no loans on personal property. He required an abstract of title of complainant showing her ownership of the property and the opinion of an at-

torney upon it; that the abstract was furnished him for an examination and also an opinion by Noble Smithson, a practicing attorney. The complainant was the principal in the note and mortgage and the credit was extended by him to her on the real estate described in the mortgage; that Adams told him the loan was being obtained by complainant to pay off a mortgage on the property; that after he purchased the property at the sale under the Keeling mortgage, he rented it to the complainant and her husband on the 1st day of April, 1897, and the rent was collected by his agent for each month until and including June, 1898. After the complainant and her husband had rented the premises from him he went through the house with the complainant, who showed him what repairs were needed and requested him to make them, which he did at a cost of $100; that the complainant and her husband were occupying the property as his tenant at the time he sold it to Mrs. Gafford.

Witness Wilder corroborates Kreth as to the execution of the lease and the fact of possession by the complainant and her husband as his tenants under it.

Bethea testifies that as agent of Kreth he collected the rents, which were paid to him by complainant's husband. That he was requested by both complainant and her husband to have some repairs made and that he and Kreth went to look at the house and premises. The complainant pointed out what repairs were needed and they were made. That he had a conversation with the complainant in which she stated that they had lost the property, and in a conversation had with her husband pending certain negotiations looking to a trade between Gafford and the complainant and her husband, in which it was discovered that Thomas's mortgage has not been satisfied of record, he told witness that the money borrowed from Kreth was taken by him in person to Tuscaloosa and paid to Thomas.

Gafford also testified to the same statement being made by the complainant's husband. That Thomas owned a mortgage upon this property when Kreth made the loan is not controverted. The complainant, on

[Scarbrough v. Rowan.]

cross-examination, simply said that it was not her debt and that her husband paid Thomas, but not out of the Kreth money. Her husband swore on cross-examination that he paid to Thomas his mortgage debt before he got the money from Kreth and denied that he made any statement to Bethea and Gafford, that he took the money borrowed by his wife from Kreth to Tuscaloosa and paid it to Thomas.

We have set out at considerable length a greater portion of testimony without comment, which we deem unnecessary, since it so flagrantly and patently contradicts every material fact testified to by the complainant and her husband. We are of the opinion that she is not entitled upon the evidence to the relief sought by her bill, irrespective of the other question invoked by the defense of the respondents of *bona fide* purchasers for value without notice.

The decree of the chancery court must be reversed, and a decree will be here rendered dismissing her bill.

Reversed and rendered.