(118 So. 752)

## STROUP v. INTERNATIONAL LIFE INS. CO. et al. (8 Div. 983.)

Supreme Court of Alabama. Nov. 22, 1928.

Almon & Almon, of Decatur, for appellant.

Eyster & Eyster, of Decatur, for appellees.

BROWN, J. The bill was filed by the appellant against her husband and the appellee the International Life Insurance Company to cancel a mortgage and a deed made in pursuance of its foreclosure, executed by the complainant and her husband to the Gulf Coast Life Insurance Company, covering 54 acres of land, 50 acres of which were owned by the complainant and 4 acres by her husband, as a cloud on the complain-

ant's title. The ground upon which the bill seeks relief is that the mortgage was given to secure the debt of the husband, and that the complainant, within the contemplation of the statute, was merely his surety. Code of 1923, § 8272.

The evidence shows that some years prior to the execution of the mortgage in question the husband borrowed money from one Orr, which was used in part in building a house, barn, and other outbuildings on the four acres of land belonging to the husband, and that the complainant and her husband executed a mortgage on the lands in question to secure the payment of this debt. Thereafter, on the suggestion of Orr, and with his assistance in arranging the loan, the husband borrowed money from one Robinson to pay Orr, and complainant and the husband executed a mortgage on the property to secure Robinson. The evidence further shows that the husband became indebted to Dr. Lovelady for money borrowed to purchase mules to be used in farming operations on the land in question and other lands, and that a like mortgage was given by the complainant and her husband to secure this debt. Other debts were contracted by the husband for supplies used in his farming operation and for attorney's fees to clear up and quiet title to complainant's land.

The money to secure the payment, of which the mortgage in question was given, was borrowed from the Gulf Coast Life Insurance Company to pay the indebtedness of the husband to Lovelady and Robinson, who were pressing payment and threatening to foreclose, and in part applied to the payment of these debts, the balance being used to pay the premiums on a life insurance policy issued to the complainant's husband, but payable to her and assigned by her to the company as additional security for the loan, leaving a small balance which was used to pay on the other debts of the husband.

The evidence further shows that Tilden Stroup, the husband, first made written application to the life insurance company for the loan, but the respondent insurance company offered evidence going to show that this application was accepted on the assumption that the title to all of the property was in him, and afterwards the agent of the company learned that the complainant owned the property, and that this application was abandoned, and he then discussed the matter with the complainant. The check issued in consummation of the loan was made payable to "Tilden and Clayton Stroup and W. M. Chenault," Chenault being the agent of the insurance company. The check was indorsed by the three persons named in the check, and after checks, prepared by Chenault payable to Lovelady, Robinson, and the insurance company for the premiums, were signed by the complainant, the check was deposited in the bank to the credit of the complainant. The balance after payment of the checks so issued, amounting to some few cents over $112, was checked out by the complainant in part payment of the other debts mentioned.

The mortgage, the name of the husband appearing first in the order of signing, followed by that of the complainant, recites:

"That whereas Tilden Stroup and Clayton Stroup is (are) justly indebted to the parties of the second part in the principal sum of One Thousand Dollars, evidenced by their principal notes of date herewith," etc.

And the complainant on her direct examination as a witness was asked, "Did you borrow any money from the Gulf Coast Life Insurance Company yourself?" to which she answered, "I borrowed it to pay his debts, yes, sir." And on cross-examination:

"Did you authorize him to borrow money on your land to pay his debts, or did he borrow it with your consent? Answer: Well of course we kinda talked it over; it looked like they were going to take everything we had, so he got out to see if he could get any money on his land. Question: And he went to make the arrangements himself? Answer: Yes, sir. Question: And then you went and made arrangements for the mortgage, and paid the money over to the people he owed? Answer: Yes, sir."

 The decisions of this court are to the effect that the wife may borrow money on the security of her property and devote it in whole or in part to the payment of her husband's debts without impinging the statute which prohibited her from becoming his surety directly or indirectly, and when she does so, and executes a mortgage reciting her individual or joint liability, the burden is on her when attacking the mortgage to show that she is the surety of the husband. Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Sample v. Guyer, 143 Ala. 613, 42 So. 106; Griffin v. Dawsey, 196 Ala. 218, 72 So. 32.

 And to this end the evidence must be clear and convincing to overcome the prima facie presumption arising from the recitals in the instrument. Gafford et al. v. Speaker et al., 125 Ala. 498, 27 So. 1003.

 After careful and painstaking consideration of the evidence in this case, including the correspondence in respect to the mortgage indebtedness directed by the insurance company to complainant's husband, and her plain and candid statement that she borrowed the money from the insurance company to pay her husband's debts, we agree with the conclusion of the chancellor that the complainant failed to meet the burden of proof resting upon her, with the result that his decree must be affirmed, and it is so ordered.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.