147 So. 136

**FIES & SONS v. LOWERY.**

6 Div. 254.

Supreme Court of Alabama.

March 16, 1933.

Edw. T. Rice, of Birmingham, and J. T. Johnson, of Oneonta, for appellants.

P. A. Nash, of Oneonta, for appellee.

**330**

KNIGHT, Justice.

Bill filed by Mrs. Bertha Lowery against Fies & Sons to enjoin foreclosure of a mortgage, and to cancel, as clouds upon her title, the said mortgage, and another mortgage, both executed to said Fies & Sons by complainant's husband, Street Lowery. These mortgages, on their face, purport to have been executed also by the complainant; and they also purport to convey to said Fies & Sons, along with other lands, two designated lots in the town of Oneonta, Ala., which at the time constituted the homestead of the mortgagors.

It is averred in the bill that, at the time of the execution of the mortgages, the complainant and her husband actually resided upon the property, and it constituted their homestead. One of the mortgages was executed on the 25th day of January, 1922, while the other was executed under date of September 1, 1926, and acknowledged, if acknowledged at all, on the 22d day of October, 1926. This latter mortgage also conveyed the some identical two lots which were conveyed by the first mortgage.

The complainant avers that she acquired title to said property by a conveyance executed to her by her husband on the 20th day of November, 1931.

With reference to the execution of the mortgage dated September 1, 1926, the complainant makes the following consecutive averments: "The complainant further avers that the said mortgage purports to have been separately acknowledged by her before Lessie Lowery, a notary public, but that her separate acknowledgment was never taken by the said Lessie Lowery to said conveyance, and that the property herein above described is the homestead of said complainant and was the homestead of the said Street Lowery and complainant at the time of the alleged execution of the same and that the said mortgage is void on the ground and for the reason that the said mortgage was not executed or signed by her and her separate acknowledgment taken as provided by law. Or the complainant avers in the alternative that in the event the said Lessie Lowery took her said acknowledgment it was fraudulently obtained in that the complainant did not know that her homestead was included in said mortgage. And that she never knew that there was such a mortgage or mortgages purporting to have been signed by her on her said homestead to the said Fies and Sons until since her said husband abandoned her. The complainant further avers that she has not at any time executed or signed with her said husband a mortgage upon her said homestead to said Fies and Sons and that the said mortgage hereinabove specifically described or any other mortgage that may be held by the said Fies and Sons is a cloud on her title to said property and that the said mortgage or mortgages are void."

Demurrers were filed by respondents to the bill, but no decree on the demurrer appears in the record; and no error is assigned upon the record with respect to any ruling upon the demurrer.

The respondents Fies & Sons filed an answer to the bill. In their answer, Fies & Sons admitted claiming the two mortgages above mentioned on said lots, and denied the averment that said mortgages were not executed by the complainant, and averred that the complainant did execute the said mortgages, and that she duly acknowledged the same before a notary public, as shown on said mortgages. They denied that said mortgages were void, and they further denied that they perpetrated any fraud on complainant in obtaining her signature to said mortgages, or to either of them.

The respondents further aver in their answer that, at the time the said mortgages were given, the said Street Lowery, the husband of complainant, was the owner of the property, and they aver that each of said mortgages was given to secure the indebtedness therein recited, due and owing from the said Street Lowery to the complainants. The respondents Fies & Sons prayed that their answer be taken and considered as a cross-bill exhibited against the complainant, and further prayed that the court decree that said two mortgages, which are made exhibits to the cross-bill, "are valid liens on said lots 103 and 104 in block 9, of the original survey to the town of Oneonta, as platted and filed in the Probate Office of said county; that said mortgage be foreclosed, that this court will make and enter a decree authorizing cross-complainant to foreclose said mortgage according to the terms of said mortgages, or will direct the register of this court to advertise and sell the same, whichever may seem most equitable and just to the court. They further pray that the court ascertain the amount of the indebtedness, including the interest and a reasonable attorney's fee, due on each of said mortgages; and authorize the foreclosure of said mortgages as hereinabove prayed for the said amount ascertained to be due on each of said mortgages," etc.

The complainant in the original bill filed answer to the cross-bill, in which she denied that the said Street Lowery was in fact the owner of the property described in the original bill, but admitted that the legal title was in the said Street Lowery at the time the mortgages were executed. She averred that "the property was paid for with money or funds of the cross-respondent, and in equity and good conscience the said property was that of said cross-respondent on the 22nd day of February, 1922." Cross-respondent then proceeds to reassert the invalidity of said mortgages for the reason stated in her original bill.

On final hearing, on pleadings and proof, the court decreed that said mortgages were null and void, and constituted clouds on the title of complainant in so far as they undertake to convey and embrace the property described in the original bill of complaint, to wit: "Lots 103 and 104 in Block Nine (9) in the original survey of the town of Oneonta, Blount County, Alabama." The court further denied relief to cross-complainant under their cross-bill.

From this decree, the present appeal is prosecuted.

The testimony, other than that which was documentary, was taken by depositions before the register. The testimony not having been taken orally, in open court, no presumptions are indulged as to the findings of fact on which the decree is based. Andrews v. Grey, 199 Ala. 152, 74 So. 62; Blair et al. v. Jones et al., 201 Ala. 293, 78 So. 69; Code, § 10276, subsec. 1.

The testimony is conclusive to the point that each of the two mortgages were actually signed by the complainant. The evidence is also without conflict that, if any fraud or imposition was practiced upon the complainant, in the signing of the mortgages, or if she was, in any way, misled as to the property conveyed by the same, Fies & Sons had no hand in it, and the evidence wholly fails to give the slightest hint of any wrongdoing on the part of these mortgagees. The evidence further shows, without the slightest doubt, that the mortgages were given to secure a bona fide indebtedness due, and to become due, from the said Street Lowery to the said Fies & Sons. It also appears, without dispute, that the two lots in question constituted the homestead of the mortgagor Street Lowery at the time of the execution of the mortgages, and that the complainant and her husband were then living together as man and wife. There is no averment in the bill as to the value of the homestead, nor is there any evidence in the record as to its value. And we are also of the opinion, from the evidence, that the legal and equitable title to the homestead, in so far as the complainant is concerned, was in the husband at the time the mortgages were executed to Fies & Sons, and that, if the complainant has any right to file the present bill, it grows out of the conveyance to her by her husband after the execution of the mortgages.

It is the settled rule of our decisions that, although a married man, owning a homestead, cannot make a valid alienation thereof without the voluntary signature and assent "of the wife," yet she has no title therein, legal or equitable, during the life of the husband, and she cannot, ordinarily, maintain a bill to avoid the conveyance of the homestead, on the ground that it was executed without her voluntary signature and assent, when she does not allege that the husband "fails to act." Seaman v. Nolen, 68 Ala. 463; Miller v. Marx, 55 Ala. 322; Bender v. Meyer, 55 Ala. 576; Jones v. De Graffenreid, 60 Ala. 145; Weiner v. Sterling, 61 Ala. 98: Thompson on Homestead, §§ 695, 696; Vancleave v. Wilson, 73 Ala. 387; Grider v. American Freehold L. & M. Co., 99 Ala. 283, 12 So. 775, 42 Am. St. Rep. 58.

So, then, in this case, the complainant's authority to file this bill, under the evidence in the cause, is referable solely to the title she acquired by the conveyance from her husband, executed subsequently to the mortgages. We make this observation, at this time, for hereafter, in the further consideration of the case, we will have occasion to allude to this principle.

It has been uniformly held in this jurisdiction that the act of taking and certifying an acknowledgment of the grantor to a deed or mortgage, or other conveyance, is the exercise of a judicial function, and, when the certifying officer acquires jurisdiction by having the *grantor* and the *instrument* to be acknowledged before him, and then exercises his jurisdiction thus acquired, the resulting certificate is conclusive of the truth of all those facts therein stated, which the officer is by law authorized to state, until successfully assailed for *duress or fraud participated* in by the grantee, or brought to his notice when parting with the consideration. Moore et al. v. Bragg, 212 Ala. 481, 103 So. 452, 454; Qualls v. Qualls, 196 Ala. 524, 72 So. 76; Parrish v. Russell, 172 Ala. 1, 55 So. 140; Orendorff v. Suit, 167 Ala. 563, 52 So. 744; Hayes v. Southern Home Bldg. & Loan Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216; Grider v. American Freehold Land Mortgage Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58; Moog v. Strang, 69 Ala. 98; Giddens v. Bolling, 99 Ala. 319, 13 So. 511.

But it has also been held by this court, and it is now the settled law of this state, that, if the certificate of acknowledgment is made by an officer without having acquired jurisdiction "of the party or subject-matter—that is to say when the party [grantor] was never in the presence of the officer in connec-

tion with an acknowledgment of the instrument, or there was no signature thereto, as the subject of inquiry—[such certificate] may be impeached as a fabrication." Moore v. Bragg, supra; Chattanooga Nat. B. & L. Ass'n v. Vaught, 143 Ala. 389, 39 So. 215; Qualls v. Qualls, supra; Cheney v. Nathan, 110 Ala. 254, 20 So. 99, 55 Am. St. Rep. 26; Giddens v. Bolling, supra.

The 1922 mortgage appears to have been acknowledged before W. M. Hagood, a notary public of Blount county, Ala., and the separate acknowledgment of Mrs. Lowery, appended to the mortgage, is in due form pre-scribed by statute for such acknowledgments. Mrs. Lowery claims that she never appeared before the notary, and never made the acknowledgment as certified to by this notary. In this, she is supported by the testimony of the husband. We are not at all impressed by the testimony of the husband. In the case of Miller v. Marx, 55 Ala. 322, Judge Stone gave expression to a most salutary rule, in discussing the weight and effect that should be given to testimony of interested persons, when impeaching acknowledgments to conveyances. His utterances on the subject are so forceful, and so directly in point here, that we feel it would not be amiss to quote the following from that decision: "The question we are discussing is not new in the courts of justice. When families are about to lose the protection of the roof-tree, and to be turned homeless upon the world, it is but human that they should resort to every means within their power so dire a calamity. Interest is no longer a disqualification to testify, under the statutes of this State. Impelled by keen apprehension of want, it is not surprising that parties to the suit, when on the witness stand, should testify under undue bias, no matter how honest their intentions to tell only the truth may be. Wives rarely join in a conveyance or incumbrance of a homestead, without a suppressed misgiving or reluctance. When in after years—perhaps after the death of the husband—such conveyances are about to be enforced, and the family dispossessed, how easy to prove by the wife herself, and perhaps by the children who have all the while been around her, that her signature was not voluntary, and that she did not assent to the conveyance. If such testimony can prevail to set aside solemn conveyances, acknowledged or proved, and certified according to the forms of law, what confidence can the public repose in land titles? It is much less hurtful that cases of individual hardship should be endured, than that, on testimony always open to distrust, the repose of society should be disturbed by so fearful discredit cast on the titles to real estate."

In 1 Corpus Juris, 897, the rule on this subject is broadly stated. If the solemn deed of a party to real estate, duly attested by a public officer and recorded according to law, may be avoided by the grantor's individual oath, *or anything short of clear and convincing* evidence, the efficacy of recording statutes is largely destroyed, and the title to such property is precarious indeed. Public policy, as well as individual security, require that the ownership and peaceful possession of land should be subjected to no such hazard.

In the case of Young v. Duvall, 109 U. S. 573, 3 S. Ct. 414, 416, 27 L. Ed. 1036, Mr. Justice Harlan writing for the court, it is held that evidence to impeach an acknowledgment of a deed must be of such a character as will clearly and fully show the certificate to be false or fraudulent. Judge Harlan then proceeds to say: "The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity in the titles to real estate which would inevitably follow from one less rigorous."

In the case of Smith v. McGuire, 67 Ala. 34, 37, Chief Justice Brickell, writing for the court, said: "As the certificate forms part of the deed—is essential to its validity, and the purchasers are invited to look to and rely upon it, all will admit that the evidence impeaching it, ought to be *clear, convincing,* and *conclusive,* reaching a high degree of certainty, leaving upon the mind *no fair, just doubts.* * * * Otherwise, there would be the most painful uncertainty and insecurity in regard to the titles to a large, if not the larger, part of the real estate of the State which is, and has been for years past the subject of individual alienation." (Italics supplied.)

Much weight, of necessity, must be accorded to the certificate of acknowledgment, and it should only be set aside or impeached by evidence that is clear and convincing. Freeman v. Blount, 172 Ala. 655, 55 So. 293; Orendorff v. Suit, 167 Ala. 563, 52 So. 744; Barnett v. Proskauer, 62 Ala. 486.

In the case of Freeman v. Blount et al., 172 Ala. 655, 55 So. 293, 296, this court, speaking through McClelland, J., said: "A regular certificate of acknowledgment to a deed, thereby forming 'a part of the deed,' will not be impeached for forgery or falsity in a case admitting evidence to impeach it, unless the evidence to that end is clear and convincing, 'reaching a high degree of certainty, leaving upon the mind no fair, just doubts.' " Barnett v. Proskauer, 62 Ala. 486; Smith v. McGuire, 67 Ala. 34, 37; 1 Ency. L. & P. pp. 928–932; 1 Cyc. 623; Grider v. American Freehold Land & Mortgage Co., 99 Ala. 281, 289, 12 So. 775, 42 Am. St. Rep. 58.

"Where the witnesses, testifying in the affirmative on the issue of forgery or falsity vel non of the certificate of acknowledgment, are interested, their testimony will be

carefully scrutinized; and, 'if it is full and direct, it is entitled to the same credit which would be given to the evidence of the other witnesses whose credibility was affected only by reason of interest.' Barnett v. Proskauer, 62 Ala. 486." Freeman v. Blount, supra.

We deem the above authorities amply sufficient to guide us in reaching a proper and just determination of the question presented.

Mr. and Mrs. Lowery both testified that Mrs. Lowery did not appear before the notary and voluntarily assent to the execution of the mortgage, executed under date of January 25, 1922, which appears to bear, and does bear, her signature. That she signed it there is no shadow of a doubt, and that it was promptly filed for record. The notary, who certified to the acknowledgment to this mortgage, was examined by the respondents. He testified, in effect, that he did not remember the circumstances of the acknowledgment, but that the separate acknowledgment of Mrs. Lowery to said mortgage was in his handwriting, and that, while he did not remember the circumstances, and had no "personal recollection of Mrs. Lowery ever being at his office, for the purpose of executing any paper," yet he testified: "I do not remember the circumstances of the acknowledgment, but I did not take acknowledgments when people was (were) not present. I have never charged a neighbor, or friend for taking acknowledgments in my life, and I did not violate the law in taking that acknowledgment, but I do not recall the circumstances of either of them coming before me and taking that acknowledgment."

When it is recalled that the occurrence took place some nine years before this witness was called to testify about the transaction, it is no small wonder that he could not remember the circumstances. His testimony to the effect that he never took acknowledgments of people not present is not only persuasive of the fact that Mrs. Lowery appeared before this notary and voluntarily assented to the execution of the mortgage, but from it we have no sort of doubt but that the acknowledgment speaks the whole truth of the matter.

■■ We are without any sort of doubt that Mrs. Lowery not only signed the 1922 mortgage, but that she duly acknowledged it before the notary, Mr. Hagood, as recited in the certificate, and our conclusion is the court erred in decreeing that mortgage to be null and void. We hold it to be a valid, legal, and enforceable lien upon the property, to the extent of any balance due thereon.

Likewise, after full consideration of the testimony, with reference to the execution and acknowledgment of the mortgage dated September 1, 1926, we are also at the conclusion that the certificate of acknowledgment thereto appended of the notary is not shown to be false by that character and measure of proof required in such cases. We cannot say that the evidence relied upon by the complainant to impeach the certificate was either clear or convincing. The burden of proof was and is upon the complainant, and we hold that this burden has not been discharged in this case. We further hold that the court erred in its decree canceling this mortgage, and declaring it null and void. Our conclusion is that it is a valid and subsisting lien, for any amount due thereon, on the property conveyed thereby.

■■ We assume that the court, upon consideration of the evidence, reached the conclusion that the certificates of acknowledgment were false and successfully impeached. But such a conclusion, under the present bill, did not justify the cancellation of the mortgages, as clouds upon the complainant's title—a title acquired by a conveyance from her mortgagor husband. Before such a decree, in the event of such a finding, could properly be entered, and as a condition precedent, Mrs. Lowery, as the vendee of the mortgagor, should have been required to make restitution of any moneys, or things of value, obtained by her grantor from Fies & Sons upon the supposed validity of these mortgages. This upon the plainest principles of equity that "he who seeks equity must do equity." We cannot give our sanction to the proposition that a person can obtain another's money or property upon the faith and assurance of a mortgage security, and, after receiving and appropriating it, go into a court of equity, where the maxim that he who seeks equity must do equity has always been rigidly applied and enforced, and have that court to cancel the security as a cloud upon his title, without returning the money or property so obtained. Grider v. American Freehold Land & Mortgage Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58; Giddens v. Bolling, 99 Ala. 319, 13 So. 511; Cross et al. v. Bank of Ensley, 203 Ala. 561, 84 So. 267; McWhorter v. Tyson, 203 Ala. 509, 83 So. 330; Interstate Trust & Banking Co. et al. v. National Stockyards National Bank, 200 Ala. 424, 76 So. 356; Coburn v. Coke et al., 193 Ala. 364, 69 So. 574.

The conclusion reached by us that the mortgages attacked were and are valid incumbrances leads to the conclusion also that the court erred in holding the respondents were not entitled to relief under their cross-bill, and in dismissing it. The court should have allowed cross-complainants to proceed with the foreclosure of said mortgages, either under the powers contained therein or under the decree of the court.

It follows from the above that the decree appealed from granting complainant relief will be reversed and a decree here rendered dismissing complainant's bill of complaint, and dissolving the injunction, and the decree in so far as it dismisses the cross-bill is re-

versed, and the cause remanded, with directions to the circuit court to proceed with the foreclosure of the mortgages, as prayed in the cross-bill.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.