28 So.2d 553

**FEDERAL LAND BANK OF NEW OR-LEANS, LA., v. SUTTON et al.**

**4 Div. 409.**

Supreme Court of Alabama.

Dec. 5, 1946.

Rehearing Denied Jan. 16, 1947.

E. W. Norton, of Clayton, and H. D. Finlay, Jr., of New Orleans, La., for appellant.

Jas. W. Winn, of Clayton, for appellees.

STAKELY, Justice. ·

This litigation originated in an ejectment suit filed by The Federal Land Bank of New Orleans, La., against J. S. Sutton, since deceased, A. B. Sutton, Annie Sutton and Tom Baker. A. B. Sutton and Tom Baker were tenants of J. S. Sutton of the lands involved in the suit. The Federal Land Bank of New Orleans, La., claims title to the lands through a mortgage dated July 16, 1923, and the foreclosure thereof as shown by foreclosure deed dated August 14, 1935. This suit involved the validity of these instruments.

The mortgage purports to have been executed by Catherine Sutton and J. S. Sutton to The Federal Land Bank of New Orleans, La. Catherine Sutton was the first wife of J. S. Sutton. She died, intestate, in January, 1926, leaving as her sole heirs, her husband J. S. Sutton and their only child A. B. Sutton, who in 1923 was 27 years of age. The lands without dispute belonged to Catherine Sutton at the time of the alleged execution of the mortgage. Annie Sutton became the wife of J. S. Sutton by his second marriage.

The suit was transferred by order of the court to the equity side of the docket and there validity of the mortgage and the foreclosure thereof was assailed by a bill

of complaint filed by the aforesaid defendants in the ejectment suit against The Federal Land Bank of New Orleans, La. During the pendency of the suit J. S. Sutton died and the suit was revived in the name of A. B. Sutton, as his personal representative. The case was submitted for final decree eleven years after its institution. Under the amended bill, the complainants are A. B. Sutton, individually, and as administrator of the estate of J. S. Sutton, deceased, Annie Sutton and Tom Baker.

The bill of complaint has three aspects. It attacks the validity of the instruments on the grounds, (1) the indebtedness for which the mortgage was claimed to have been given as security was the debt of the husband, J. S. Sutton, and not the debt of the wife Catherine Sutton, (2) the mortgage was not signed by Catherine Sutton and (3) Catherine Sutton was a non compos mentis at the time the mortgage is alleged to have been executed. The court rendered a final decree holding the instruments invalid on the theory alone that the alleged indebtedness claimed to be secured by the mortgage was not the debt of Catherine Sutton, but was solely the debt of J. S. Sutton. This appeal is from that decree. None of the testimony on which the case was submitted for final decree was taken orally in open court. Accordingly it is our duty to consider the case without presumption in favor of the correctness of the decree of the lower court. Ruf v. Davis, 232 Ala. 477, 168 So. 174; Ezzell v. First Nat. Bank of Russellville, 232 Ala. 161, 167 So. 546.

The mortgage introduced in evidence clearly shows from its recitals that the debt secured thereby was the debt of Catherine Sutton. This creates a prima facie presumption in favor of its truth which can only be overcome by clear and convincing evidence. Stroup v. International Life Ins. Co., 218 Ala. 382, 118 So. 752; Gafford v. Speaker, 125 Ala. 498, 27 So. 1003; Myers v. Steenberg, 206 Ala. 457, 90 So. 302. If the instruments are declared invalid, A. B. Sutton, the only heir, succeeds to the title of his mother and if J. S. Sutton were still alive, he would have had a life estate in the property. Accordingly, under the circumstances which we shall in part relate, their testimony should be considered with great caution before solemn conveyances, purporting to be acknowledged according to law, are set aside. Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136; Smith v. McGuire, 67 Ala. 34.

The evidence is voluminous. We have considered it with great care. It would be impractical to set it all out, but we shall try to summarize in part its salient features. After the loan was closed in 1923, appellant mailed statements of the yearly installments maturing on the loan to Catherine Sutton at Route 4, Ariton, Alabama. Payment was made to appellant of the annual installments from December 15, 1923, to and including April 19, 1931. There was failure to pay the annual installments maturing December 15, 1931, 1932 and 1933 and in April 1934 the loan was declared fully due and payable and the mortgage ordered foreclosed. The foreclosure proceedings were first enjoined by J. S. Sutton and A. B. Sutton in a suit instituted before this suit. That suit terminated and the injunction was dissolved for failure to give the required bond and the foreclosure sale was again advertised in 1935. In that suit the bill of complaint sworn to by J. S. Sutton and A. B. Sutton charged in part as follows:

"Your orator, J. S. Sutton, further avers that until recently did he learn that Catherine Sutton, deceased, the owner of said land embraced in said mortgage did not sign said mortgage."

J. S. Sutton and A. B. Sutton again stopped the foreclosure by filing a petition in bankruptcy where they listed in their schedule of liabilities and encumbrances the mortgage from Catherine Sutton and husband J. S. Sutton to appellant. In those proceedings they offered and agreed "to pay to the Federal Land Bank of New Orleans on their indebtedness to it the sum of Seventy-five Dollars on the first day of November 1935 and Seventy-five Dollars on the first day of November of each succeeding year until the indebtedness is fully paid." The Bankruptcy Court found that the petitioners had no equity in the real estate embraced in the mortgage and authorized appellant to proceed with the foreclo-

sure. The mortgage was foreclosed on April 14, 1935, and the property purchased by appellant. The appellant then instituted the ejectment suit, hereinabove referred to, which was the beginning of the present litigation.

J. S. Sutton, the husband of Catherine Sutton, deceased, one of the original complainants, testified that he signed and filed an application in the name of his wife with the Farm Loan Association for a loan of $1200 from The Federal Land Bank of New Orleans, La., to be secured by a first mortgage on lands belonging to Catherine Sutton, his wife, after informing H. L. Martin, the Secretary-Treasurer of the Association, that his wife had had a stroke of apoplexy and paralysis which left her in a helpless physical and mental condition; that his wife Catherine Sutton did not sign or acknowledge the mortgage; that he received the proceeds of the loan and used the funds in his individual business operations. This is the testimony on which largely rests the case of complainants. We shall consider it in greater detail along with the testimony of other witnesses. So as to give some order to the inquiry, we shall consider the evidence from the standpoints of the application for the loan, the execution of the mortgage and the disbursement of the proceeds of the loan. Since, however, the mental and physical condition of Catherine Sutton plays an important part in all these matters, we shall first consider this general aspect of the case.

Several non-expert witnesses including J. S. Sutton and A. B. Sutton, who were relatives, tenants and neighbors, testified that Mrs. Catherine Sutton suffered a stroke of apoplexy prior to the date the application and mortgage purported to have been executed, which paralyzed her and affected her speech and mind. A substantial part of this testimony went so far as to show that Mrs. Catherine Sutton was not only entirely incapacitated physically but was a non compos mentis. However, H. R. Dykes, a physician who waited upon Mrs. Catherine Sutton after she suffered the alleged stroke, testified that he treated her during the period from sometime in 1920 or 1921 to sometime in 1923 prior to July 16, 1923, that he then moved to California where at the time he

was practicing his profession and had not seen Mrs. Sutton since. In a letter which he wrote to J. S. Sutton in April, 1937, he stated:

"She was very feeble, also her mind was not good and if I remember correctly she was totally disabled to do any work at that time."

In his testimony, which was taken by deposition, he was asked the following questions:

"* * * If you have answered above questions, stating that Mrs. Sutton had a stroke of apoplexy and was paralyzed, please state, Doctor, the extent of the paralysis? Did it involve her entire body? Her arms? Her hands? Her lower limbs? Was her speech affected? Could she talk? Was her mind impaired as a result of the paralysis? Is it not a fact, Doctor, that said stroke of apoplexy and paralysis was of such extent and character as to render Mrs. Sutton absolutely helpless? Is it not a fact that her mind was so badly impaired as to be almost entirely gone? Is it not a fact, Doctor, that for all practical purposes so far as attending to or transacting business, Mrs. Sutton was practically, if not in fact, non compos mentis?"

In answer to the foregoing questions, Dr. Dykes testified;

"In the course of my practice in Barbour County, I had as one of my patients the wife of J. S. Sutton, Catherine Sutton. I visited her professionally for the first time sometime during the years of 1920 or 1921, the exact date of which I cannot recall. At the said time of my first visit she had suffered a severe stroke and was paralyzed and helpless. I cannot recall the time of year or the particular year but it was one of the two years above stated. I do not recall the relative condition of the different parts of her body, except to say that during the entire course of my visitations she was in an absolutely helpless condition."

At no place in his testimony did Dr. Dykes give his opinion that Catherine Sutton was non compos mentis or without sufficient understanding to attend to business.

Bill Martin, a son and former law partner of H. L. Martin, the deceased Secretary-Treasurer of the Dale County Farm Loan

Association, testified in substance that Y. E. Folsom, as officer of the Ariton Banking Company of Ariton, Alabama, in the latter part of January, 1923, discussed with him the possibility of obtaining a Federal Land Bank Loan for Catherine Sutton and her husband Jess Sutton for the purpose of refinancing an indebtedness they owed the Ariton Banking Company. On February 1, 1923, Y. E. Folsom called Bill Martin and informed him that the Suttons were coming to Ozark to discuss the matter of obtaining the loan through the association from the bank. J. S. Sutton and A. B. Sutton came to Ozark and discussed the facts relative to the information required in filling out an application for the loan. They gave the information that the lands were owned by Catherine Sutton, that she was ill and could not come unless she could obtain the loan. Upon inquiry as to the nature of Mrs. Sutton's illness, they stated that she had had a stroke which paralyzed her but which did not affect her mind. The blanks in a printed form of application were thereupon filled in upon information given by J. S. Sutton and A. B. Sutton, the application as filled out giving various information relative to the loan, including the information that The Ariton Banking Company held a mortgage on the property for $1400. The application was then given to them to take to Mrs. Sutton for her signature. They were informed that her signature would have to be witnessed. They brought the application back the next day. Bill Martin identified the original application purporting to be signed by Catherine Sutton and witnessed by A. B. Sutton, which was introduced in evidence.

J. S. Sutton testified that he went to Ozark to the office of Harry Martin, told him the condition of his wife and asked if he could put up the property of his wife for a loan. He told me "Yes and he would fix the papers."

"He did some writing and told me to sign there and I do not remember whether he told me to sign my wife's name or whether he signed it. I think he told me to sign it showing me where to sign, said it was all right for her name to be signed. I never heard any more about the matter until W. D. Brock, a Justice of the Peace, came to my house with the mortgage to be signed. Mr. Martin did not ask me what I wanted with the money or what I would do with the money, neither did I tell him."

A. B. Sutton testified that he did not witness the application and he did not know who signed his name as witness thereto, that his mother did not write the word "Catherine" and he did not write the word "Sutton" following the word "Catherine" as it appears on the application, that he knew nothing whatever about the application and never saw it before it was introduced in evidence.

A letter written to complainant's attorney dated December 7, 1935, prior to the litigation was introduced in evidence by the respondent. A. B. Sutton admitted that he signed this letter. J. L. Mixson, Cashier of the Bank of Commerce, qualified as an expert. He testified that in his opinion the signature of this letter and the signature of A. B. Sutton on the application was that of the same person. He further testified that "Sutton," a part of the signature of "Catherine Sutton" was signed by the same person who signed the letter and the application. Judge T. D. Grubbs, a banker, who also qualified as an expert, testified to like effect.

According to the testimony of J. S. Sutton, A. B. Sutton and Tom Danner, a neighbor, on July 16, 1923, W. D. Brock, a Justice of the Peace, and his son F. P. (Frank) Brock, both of whom have since died, came to the home of J. S. Sutton for the purpose of getting signed a mortgage to The Federal Land Bank. On this occasion W. D. Brock in the presence of J. S. Sutton, A. B. Sutton and Tom Danner and F. P. (Frank) Brock, attempted to converse with Mrs. Catherine Sutton, who was confined to her bed, in an effort to explain to her the nature of business he was there to transact. Catherine Sutton lay in a stuper or coma and W. D. Brock informed J. S. Sutton that it was impossible for the loan to go through as his wife could not sign the mortgage. However, J. S. Sutton signed the mortgage but did not acknowledge it and the Justice of the Peace and his son left without having the mortgage executed by Catherine Sutton.

The testimony of the respondent showed that the application of Catherine Sutton was received on April 18, 1923, and referred to Frank O. Deese, a Land Bank appraiser (now Judge of Probate of Dale County), who accompanied by Bill Martin appraised the farm of Mrs. Catherine Sutton on May 1, 1923. Frank O. Deese testified that when he visited the farm on May 1, 1923, he saw Mrs. Sutton in person and personally discussed with her the matter of this loan. She was weak physically but he considered her mentally well and capable of understanding the matters relative to the loan about which they talked. The testimony of Bill Martin was to like effect. The Federal Land Bank received the appraiser's report on or about May 11, 1923, and approved the application for a loan of $1200. It notified Catherine Sutton of the approval of the application and informed her that an abstract of title covering the real property she offered as security for the loan would be required. The abstract of title prepared by Mrs. Sutton's attorney was furnished. The Bank examined this abstract and sent to the Dale County National Farm Loan Association a note and mortgage to be executed by Catherine Sutton and her husband.

The mortgage and note were offered in evidence, purporting to be signed by Catherine Sutton by mark and by J. S. Sutton, Catherine Sutton signing first. Both mortgage and note were witnessed by "D. G. Brock" and "W. D. Brock, J. P." W. D. Brock, the Justice of the Peace, and his son F. P. (Frank) Brock were both dead when the case was tried, but D. G. Brock gave his testimony by his deposition taken at his present home in Jacksonville, Florida. He testified that he was one of the sons of W. D. Brock, deceased, that he witnessed the signature of the mortgage and note by Catherine Sutton and J. S. Sutton, that apparently Mrs. Sutton had a good mind, though she seemed to be troubled with "some muscular sickness," that the note and mortgage were read to her by W. D. Brock, that he considered her mind good and that she understood what she was doing.

The mortgage shows that it was acknowledged in due form by both Catherine Sutton and J. S. Sutton before W. D. Brock, a Justice of the Peace. Both J. S. Sutton and A. B. Sutton testified that the Justice of the Peace came into the room where Catherine Sutton was lying in bed to secure her signature and take her acknowledgment. Such acknowledgment is entitled to great weight. The burden of proof is on the complainants and the certificate of acknowledgment can be impeached only by clear and convincing evidence. Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136; Weldon v. Bates, 229 Ala. 169, 155 So. 560; Metropolitan Life Ins. Co. v. Estes, 228 Ala. 582, 155 So. 79; Jeffreys v. Federal Land Bank of New Orleans, 238 Ala. 97, 189 So. 557; Freeman v. Blount et al., 172 Ala. 655, 55 So. 293; Smith v. McGuire, supra.

With reference to the check which represented the proceeds of the loan and which was introduced in evidence, Bill Martin testified that he signed the name of Catherine Sutton by mark on the back of the check and she touched the pen and that this was done in Ariton, Alabama. The endorsement purports to be witnessed by himself and his wife. This endorsement is seriously questioned. It is claimed that Catherine Sutton was not able to make the trip to Ariton. The check was also endorsed by The Ariton Banking Company and this endorsement is not questioned.

J. S. Sutton testified in substance that his wife did not endorse the check, that he received the proceeds of the loan and used the proceeds in his business. This court has often recognized that it is no infraction of the statute (§ 74, Title 34, Code of 1940) for a wife to borrow money on the security of her own property and devote the money to the payment of her husband's debts or turn over the money to the husband for his use. Garland v. First National Bank of Scottsboro, 231 Ala. 572, 165 So. 850; McDaniel v. Mellen, 223 Ala. 181, 134 So. 873; Griffin v. Dawsey, 196 Ala. 218, 72 So. 32. The general condition of Catherine Sutton was not good. She could not be active in the management and disbursement of the proceeds of the loan. If it was her plan for her husband to get the benefit of the loan and for herself to be the principal debtor and we think it was, then it was her valid debt, even though he received the proceeds of the loan. Citizens Bank of

Moulton v. Burks, 242 Ala. 465, 6 So.2d 597; American Freehold Land Mortgage Co. v. Thornton, 108 Ala. 258, 19 So. 529, 54 Am. St.Rep. 148.

■ We conclude that under all the evidence the case of complainants is not so clear and convincing as to warrant us in annulling the mortgage and foreclosure deed. The decree of the lower court is accordingly reversed and a decree is here rendered denying the relief sought by complainants. We are of the opinion that the respondent The Federal Land Bank of New Orleans, La., is entitled to relief as sought in its cross-bill. It is, therefore, further ordered that the prayer of the cross-bill be granted, declaring the mortgage and foreclosure deed in all respects valid and directing that appellant, cross-complainant, be placed in possession of said lands.

Reversed and rendered.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.