30 So.2d 241

### LEONARD v. WHITMAN et al.

6 Div. 458.

Supreme Court of Alabama.

March 27, 1947.

Rehearing Denied May 15, 1947.

Edw. T. Rice, of Birmingham, for appellant.

Horace C. Alford, of Birmingham, for appellees.

LAWSON, Justice.

This is an appeal from a decree of the circuit court of Jefferson County, in equity, overruling a demurrer to a bill filed by appellees against appellant and one Monnie Mae Whitman.

There is only one question here presented, namely, may a wife, who did not sign and who did not separately acknowledge mortgages executed by her husband on homestead property without her knowledge, maintain a bill in equity after her husband's death to have the homestead property set aside to her and to cancel the mortgages executed by her husband thereon, without offering to do equity and restore to the mortgagee the amount of money loaned by the mortgagee to the husband under the said mortgages, the wife having received no benefits from the money so loaned.

For the purpose of considering this question, the case made by the bill may be summarized as follows:

Annie Dubose Whitman, one of the complainants, was married to Edward Whitman at Selma, Dallas County, Alabama, in the year 1900, in accordance with a marriage license duly issued and recorded. Until 1925 they lived and cohabited togeth-

er as man and wife in the city of Selma, where their daughter, complainant Viola Whitman Sharp, was born.

Edward Whitman went to Birmingham in 1925, where he obtained regular employment, but he continued to support his wife and daughter who remained in Selma. At intervals he visited his family in Selma and on occasions, his wife Annie visited him in Birmingham. On such visits, which continued until 1934, they lived and cohabited together as man and wife.

In 1934, Edward Whitman inherited a house and lot located in Jefferson County, into which house he and his wife Annie moved and which they occupied as their home.

On November 10, 1943, the said Edward Whitman died intestate in Birmingham, seised and possessed of the above-mentioned property. Complainant Annie Dubose Whitman and the said Edward Whitman were never divorced.

In August, 1944, after the death of the said Edward Whitman, complainants learned for the first time that he had gone through a marriage ceremony in October, 1938, with one Mattie Mae Smith, now known as Monnie Mae Whitman, one of the respondents in this proceeding. This marriage was in accordance with a marriage license duly issued and recorded in Jefferson County.

It was also in the month of August, 1944, that the complainants for the first time became aware of the fact that the said Edward Whitman had executed any mortgage or mortgages, or created any lien or liens on or against the aforementioned house and lot. At that time they became advised that Edward Whitman had executed mortgages on the said property to the respondent, C. E. Leonard, on the following dates and in the following amounts: on March 2, 1940, $200; on August 7, 1940, $350; on August 6, 1941, $370; on October 21, 1941, $440; on November 23, 1942, $525; and on June 18, 1943, $825. All of the mortgages recite that the aforementioned real estate was pledged as "security to C. E. Leonard to secure an indebtedness of ———, alleged at the said time to be owed by the said Edward Whitman to the said C. E. Leonard." The said

mortgages were all recorded in Jefferson County. The records do not show the payment or satisfaction of any of them.

Complainant Annie Dubose Whitman did not sign or in any wise execute or acknowledge any of said mortgages but all of them bear a separate acknowledgment made by the respondent Monnie Mae Whitman.

It is alleged on information and belief that the property here involved is less in value than $2,000 and less in area than 160 acres.

The respondents separately demurred to the bill of complaint. Such demurrers were overruled. Thereafter, the respondent, C. E. Leonard, filed an answer in which he incorporated three grounds of demurrer. Grounds 2 and 3 raise the same point, namely, that the bill is defective in that it does not offer to do equity. There was submission for decree on the demurrer of C. E. Leonard incorporated in his answer. This demurrer was overruled and it is from such action of the court that this appeal is taken.

As before indicated, appellant here makes the single insistence that the bill was defective in not offering to do equity and that consequently the trial court erred to a reversal in overruling the demurrer as there were grounds pointing out such alleged defect.

Unquestionably, one of the fundamental maxims of equity jurisprudence is, "He who seeks equity must do equity."

This court has adhered to and enforced this equitable doctrine in a number of cases where a husband sought the cancellation of a mortgage on or deed to land which had belonged to him and which had constituted the homestead, on the ground that the separate acknowledgment of the wife was not taken as the statute required. Grider v. American F. L. M. Co., 99 Ala. 281, 12 So. 775, 42 Am.St.Rep. 58; Giddens v. Bolling, 99 Ala. 319, 13 So. 511; Loxley v. Douglas, 121 Ala. 575, 25 So. 998; Hayes v. Southern Home B. & L. Ass'n, 124 Ala. 663, 26 So. 527, 82 Am.St. Rep. 216; Mathews et al. v. J. S. Carroll Merc. Co., 195 Ala. 501, 70 So. 143; Cross et al. v. Bank of Ensley, 203 Ala. 561, 84 So. 267; Sumners v. Jordan, 220 Ala.

208

402, 125 So. 642; Owens v. Harris, 222 Ala. 461, 133 So. 6; Hammock et al. v. Oakley, 228 Ala. 588, 154 So. 906; Green v. Federal Land Bank, 236 Ala. 431, 183 So. 418. Also see Estes v. Metropolitan Life Ins. Co., 232 Ala. 656, 169 So. 316.

In all of the cases just above cited the action was instituted by the husband, the mortgagor, who had received some consideration from the mortgagee for the execution of the mortgage. The reason for applying the maxim "He who seeks equity must do equity," is expressed in the following language in Grider v. American F. L. M. Co., supra, page 292 of 99 Ala. 281, 12 So. 775, 780, 42 Am.St.Rep. 58:

"We cannot assent to the proposition that a person can obtain another's money upon the faith and assurance of a mortgage security, and, the next moment after he receives and appropriates it, go into a court of conscience, where the maxim that he who seeks equity must do equity has ever been vigorously upheld and applied, and ask that court to cancel the security as a cloud on his title, still retaining the money, and making no offer to return or repay it."

In Loxley v. Douglas, supra, page 577 of 121 Ala. 575, 25 So. 998, 999, the reason given for applying the said maxim was: "This requirement is upon the consideration that to allow one to retain the benefits of an agreement which he repudiates, when by doing so he derives an advantage, while the uncomplaining party is subjected to loss, would be plainly inequitable."

It is apparent that the case made by this record is entirely different from the situation which existed in the cases above referred to in that here the widow, Annie Dubose Whitman, according to the averments of the bill, knew nothing about the execution of the said mortgages, did not sign or separately acknowledge them, and received no part of the consideration therefor.

Appellant insists that in spite of the fact that the wife, Annie Dubose Whitman, received no part of the consideration for the mortgages that she must offer to make restitution to the mortgagee. In support of this position appellant relies mainly on the decision of this court in the case of Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136. In that case Mrs. Bertha Lowery brought suit against Fies & Sons to enjoin foreclosure of mortgages and to cancel them as clouds upon her title. The property involved was conveyed to her by her husband who later abandoned her. Prior to such conveyance two mortgages had been executed to Fies & Sons by complainant's husband, Street Lowery, covering the homestead property. The mortgages on their face purported to have been executed also by complainant. But this she denied. The trial court decreed that said mortgages were null and void and constituted clouds on the title of complainant in so far as they undertook to convey the homestead property. This court in reversing the trial court found that the evidence showed that the complainant, Bertha Lowery, had in fact executed the separate acknowledgments to the said mortgages and that fraud was not made to appear. After holding that the trial court "erred in its decree canceling the mortgage, and declaring it null and void," the opinion proceeds as follows:

"We assume that the court, upon consideration of the evidence, reached the conclusion that the certificates of acknowledgement were false and successfully impeached. But such a conclusion, under the present bill, did not justify the cancellation of the mortgages, as clouds upon the complainant's title—a title acquired by a conveyance from her mortgagor husband. Before such a decree, in the event of such a finding, could properly be entered, and as a condition precedent, Mrs. Lowery, as the vendee of the mortgagor, should have been required to make restitution of any moneys, or things of value, obtained by her grantor from Fies & Sons upon the supposed validity of these mortgages." 226 Ala. page 333, 147 So. 136, 140.

We do not consider that portion of the opinion in the case of Fies & Sons v. Lowery, supra, above quoted, as being controlling here. Actually such language was not necessary to the decision in that case. Furthermore, Mrs. Lowery, the complainant, based her title to the property on a deed from her husband, the mortgagor.

Since she had purchased the property subject to the mortgage, it was said that she must make restitution to the mortgagee of the amount of money loaned by him to the mortgagor who was her husband. Here the wife does not claim under a conveyance from her husband, but under the operation of the statutory provisions of this state.

Section 205, Constitution of 1901, provides that a mortgage or other alienation of a homestead "by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same." Section 626, Title 7, Code of 1940, is to the same effect.

Such constitutional and statutory provisions, requiring separate voluntary acknowledgement by the wife of a homestead deed or mortgage, are for the benefit of the wife and not that of the husband. Sims v. Gunter, 201 Ala. 286, 78 So. 62; Lazenby v. Lazenby, 229 Ala. 426, 157 So. 670; Freed v. Sallade, 245 Ala. 505, 17 So. 2d 868; Weatherwax v. Heflin, 244 Ala. 210, 12 So.2d 554.

This court has in many cases held that a mortgage or conveyance of homestead without the voluntary signature and assent of the wife as provided for in the constitutional and statutory provisions, is absolutely void and inoperative. Lazenby v. Lazenby, supra, and cases there cited.

It is also the well-settled law of this state that the homestead rights of a widow and minor children in the realty of a deceased husband and father may not be affected by the testamentary disposition of the owner. Cade et al. v. Graffo et al., 227 Ala. 11, 148 So. 591; Williams v. Massie et al., 212 Ala. 389, 102 So. 611; Coker v. Coker, 208 Ala. 354, 94 So. 566; Edmonds et al. v. Cogsdill, 182 Ala. 309, 62 So. 691; Richter v. Richter, 180 Ala. 218, 60 So. 880; Bell v. Bell, 84 Ala. 64, 4 So. 189.

The homestead rights are designed to protect helpless women and children from the improvident acts of an improvident husband. They are founded in a wise public policy, the State deeming it better that wives and children should have shelter and a place to live than that a creditor should have his debt, unless he secures that

debt by obtaining the wife's separate acknowledgement.

We hold that the doctrine that he who seeks equity must do equity has no application whatever to the case made by the bill filed in this proceeding. To so hold would be a mockery of the constitutional and statutory provisions relating to the homestead rights of a wife and would be a perversion of that equitable maxim. This maxim is, of course, based on equitable principles and where as here, the complainant was not a party to the mortgages, did not know of their execution, and receive no benefits therefrom, how can it be said that the conscience of an equity court is disturbed by failure to require complainant to refund or restore to respondent that which she has not received?

To so hold would completely emasculate the constitutional and statutory provisions which, as heretofore pointed out, have been enacted for the benefit of wives and children.

It follows that the decree of the trial court must be affirmed. It is so ordered.

Affirmed.

GARDNER, C. J., and FOSTER, and STAKELY, JJ., concur.