J. Wilson Dinsmore brought an action against Central Bank, seeking to enjoin the bank from foreclosing on a mortgage. After a hearing on the merits the trial court ruled that the mortgage in question was void because the signatures of the mortgagors were neither witnessed nor acknowledged as required by Alabama law. The court permanently enjoined Central Bank from foreclosing on the mortgage, and the bank appeals.
Roy and Laurie Todd were the principal owners of A-R-A Automotive of Alabama, *Page 844 
Inc. (A-R-A). In May of 1978 Roy Todd began negotiations with Central Bank which culminated in a $100,000.00 loan from the bank to A-R-A. Roy and Laurie executed a demand note to Central Bank on behalf of the corporation, which was the only obligor on the note. To secure A-R-A's obligation to the bank, Roy agreed to mortgage his home and to obtain an accommodation mortgage to Central Bank on a commercial building, the Age-Herald Building, which was then owned by a partnership, L.O.C. Properties. L.O.C. was composed of three persons, Roy's parents, O.N. and Lois Todd, and one of their business associates, Corrine Smith.
The bank prepared a four-page document entitled "ACCOMMODATION MORTGAGE" which stated that A-R-A was indebted to Central Bank in the amount of $100,000.00 and that the mortgagors, "LOC Properties, a partnership and Roy S. Todd and wife, Laurie Todd," agreed to execute a mortgage to the bank covering the two aforementioned parcels of property. According to Roy, Central Bank's loan officer gave him only page four of the mortgage and he agreed to procure the necessary signatures and return the instrument to the bank. The loan officer testified that he did not remember whether he gave Roy the entire document or only one page of it.
Roy and his wife signed the document and Roy took it to his father's place of business and left it with him. His father signed the document and took it to his wife and to Corrine Smith, who also signed it. Each of the signatories to the mortgage testified unequivocally that he or she was presented with only a one-page document. Lois Todd and Corrine Smith testified that they were unaware that they were signing a document purporting to give the bank a mortgage on the Age-Herald property. They testified that they thought the document was a "reference" to help Roy obtain a loan.
Roy's father then carried the document to a notary to obtain a certification of the signatures. The notary public testified that he had no recollection of the events surrounding the attestation. When he notarized the document, the notary wrote the words "above signed" in the blank space in his acknowledgment rather than referring to the signatories individually.
O.N. Todd returned the document to Roy, who then returned the document to the bank, which disbursed the loan proceeds. The bank recorded the instrument in the Probate Court of Jefferson County. As recorded on that occasion, the instrument appeared to be regular on its face except for the questionable certification by the notary which stated that he had acknowledged the "above signed" signatures.
Subsequently, the title company informed Central Bank that there was a problem with the acknowledgment on the mortgage. The instrument was then re-recorded in the probate court. The instrument as subsequently recorded contained its original contents plus a fifth page. The fifth page contained two separate notary-public certifications by an employee of the bank. The first certification acknowledged the signatures of "O.N. Todd, Jr., Lois S. Todd, Corrine Smith, partners." The second certification acknowledged the execution of the document by "Roy S. and Laurie W. Todd."
Subsequent to the re-recording of the document, the bank apparently noticed that the notary acknowledgments contained on page five were not dated. The five-page document was again recorded. This time the acknowledgments on page five were dated.
All of the signatories to the mortgage denied having ever appeared before the bank employee who made the certification on page five. The three partners of L.O.C. denied having ever been inside the branch office where the notary worked. The notary had no recollection of the circumstances of the certification, but testified that she had never taken an acknowledgment of a person who had not appeared before her.
In the spring of 1981 Dinsmore began negotiations with L.O.C. for the purchase of the Age-Herald Building. The negotiations culminated in an agreement whereby *Page 845 
Dinsmore agreed to execute a note to L.O.C. for $150,000.00, plus interest. L.O.C. agreed to pay all indebtedness to Central Bank which was secured by the mortgage on the property.
Dinsmore made timely payments to L.O.C.. A-R-A, however, defaulted on its obligation to Central Bank. Central Bank gave notice of a foreclosure sale of both parcels. Dinsmore filed an action seeking to enjoin the foreclosure as to the Age-Herald Building, and a temporary restraining order restraining the bank from foreclosing on that property was issued. The foreclosure proceeded on the Todds' residence. Thereafter, the parties agreed that the TRO would be dissolved, and that a trial on the merits of the injunction would be held. Dinsmore began paying into court the monthly payments on his obligation to L.O.C.
The trial court refused to invalidate the mortgage based on the assertions by some of its signatories that they were ignorant of the nature of the document. While the court found that the putative mortgagors were presented with only page four of the mortgage to sign, the court concluded that, given the totality of the circumstances, if the partners were unaware of the true nature of the document it was due to their lack of diligence. It is apparent from looking at page four of the mortgage that it was the last page of a multi-page document. Moreover, the language on page four was sufficient to suggest the nature of the instrument. None of the partners inquired about the contents of the missing pages.
The court did rule, however, that the mortgage was invalid, based on its finding that the signatures of Lois Todd and Corrine Smith were neither witnessed nor acknowledged as required by law. Sections 35-4-20 through -24, Code of Alabama 1975. Furthermore, the court concluded that the doctrine of equitable mortgage did not preserve Central Bank's lien because there was no obligation due from the mortgagors to the mortgagee. Murphy v. Carrigan, 270 Ala. 87, 91, 116 So.2d 568
(1959). In this case the only obligor of the note secured by the mortgage was A-R-A.
Instruments conveying land must be attested by a witness, or, where the conveying party cannot write, by two witnesses; or it must be acknowledged by a notary or some other officer provided for by law. Sections 35-4-20, -23, and -24. In order for an acknowledgment to be effective it must clearly identify the person or persons who executed the conveyance, and the person signing the instrument must have appeared before the notary or other officer and acknowledged that he signed the instrument.Thomas v. Davis, 241 Ala. 271, 2 So.2d 616, 619-20 (1941); Fies Sons v. Lowery, 226 Ala. 329, 331, 147 So. 136 (1933).
Where it is alleged that an acknowledgment in a deed is insufficient, the burden of proof is on the person attacking the validity of the certificate of acknowledgment. The certificate of a notary is presumptively correct, and the evidence necessary to impeach it must be clear and convincing.Henslee v. Henslee, 263 Ala. 287, 82 So.2d 222, 225 (1955).
Central Bank argues that there was insufficient evidence to support the trial court's finding that the notary public's acknowledgment was void. To support that argument, Central Bank relies on a line of cases holding, in effect, that testimony by a mortgagor that he did not appear before the notary and voluntarily assent to the conveyance is insufficient without additional evidence of a more objective nature to overcome the presumption that the certificate of acknowledgment is valid.Fies Sons v. Lowery, 226 Ala. 329, 332, 147 So. 136 (1933);Smith v. McGuire, 67 Ala. 34, 39 (1880).
In our opinion, the evidence regarding the facts surrounding the execution of the acknowledgments was sufficient to support the trial court's finding that none of the partners other than O.N. Todd appeared before either notary. There was sufficient evidence to uphold a finding that the presumption of validity of the certifications *Page 846 
was overcome. The simple fact that the bank saw fit to add a second acknowledgment by a different notary after the instrument was filed indicates that the bank entertained some doubts about the validity of the first acknowledgment. A second acknowledgment was made six months after the document was executed. None of the partners were customers of the bank and they denied having ever been in the bank.
We turn, then, to the question of the equitable lien. In general, when a mortgage is invalid due to a technical defect, equity will give effect to the intent to the parties according to the substance of the transaction. Lewis v. Hickman, 200 Ala. 672,675, 77 So. 46, 49 (1917). A mortgage instrument which lacks proper attestation or acknowledgment will be given effect as an equitable mortgage. Courtner v. Etheredge, 149 Ala. 78,43 So. 368 (1907). In concluding that an equitable lien did not exist in this case, the trial court relied on the following language in Murphy v. Carrigan, 270 Ala. 87, 91, 116 So.2d 568
(1959):
 "In order for an equitable mortgage to exist, it is essential that the mortgagor have a mortgageable interest in the property sought to be charged as security; that there be clear proof of the sum which it was to secure; that there be a definite debt, obligation or liability to be secured, due from the mortgagor to the mortgagee; and the intent of the parties to create a mortgage, lien or charge on property sufficiently described or identified to secure an obligation."
The requirement that the debt be "due from the mortgagor to the mortgagee" may also be found in Barnett v. Waddell,248 Ala. 189, 27 So.2d 1, 4 (1946), and Jones v. Stollenwerck,218 Ala. 637, 639, 119 So. 844 (1929). None of these cases involves an accommodation mortgage, however. Each of them involves a defective mortgage given to secure the debt of the mortgagor, not the debt of a third party. Nor do any of the cases turn on the existence, vel non, of such a debt. The language in question was unessential to the resolution of the issues presented in those cases. Since the language in question was dictum, the statements in question are not binding; they constitute persuasive authority only.
Central Bank argues that this case is governed by Hooper v.Reed, 211 Ala. 451, 100 So. 875 (1924). That case involved a deed in absolute form given as a mortgage. A agreed to sell a parcel of real estate to B. B borrowed the cash for the down payment from C. A executed a deed of conveyance to C intended as a mortgage to secure the loan. This Court concluded that if the parties to such a transaction intended for the deed to operate as a mortgage an equitable mortgage resulted. With regard to the fact that the grantor, A, did not owe any debt to C, this Court stated:
 "It is immaterial whether the debt secured is that of the mortgagor or the debt of another. One person may give a mortgage on his lands to secure the debt of another. When the debt is paid the mortgagor is entitled to have his property released. If a deed intended as a mortgage is given the same reason would entitle the grantor to have the title revested upon payment of the debt." 211 Ala. at 453, 100 So. at 875.
If the rule in the Murphy opinion were extended to cover accommodation mortgages, anomalous results would obtain. For purposes of illustration, suppose that in order to secure A-R-A's loan, L.O.C. had given Central Bank a deed in absolute form conveying the bank title to the Age-Herald Building. Assuming the intention of the parties was to create a mortgage instead of a fee interest, an equitable mortgage would have been created under the rule in Hooper and L.O.C. would be entitled to have title revested upon payment of the debt. Given the fact that the doctrine of equitable mortgage would have operated in L.O.C.'s favor if it had inadvertently conveyed to Central Bank a greater interest than it intended, we see no reason in equity or logic for the doctrine to be unavailable to the bank in the converse situation. Nor are we able to find any case from this jurisdiction or any *Page 847 
other in which a court has ruled that a failed attempt at creating an accommodation mortgage, such as the one at bar, cannot form the basis for an equitable mortgage because the debt to be secured by the mortgage was another's.
The rule in Murphy should not be extended to cover accommodation mortgages. If a party attempts to create a mortgage to secure another's debt by executing a document which is formally insufficient, the doctrine of equitable mortgage should apply as it would in a case where a party executes a deed in absolute form intending to create a mortgage. Hooper, supra.
The trial court's decision is hereby reversed and the case is remanded for entry of an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ALMON and ADAMS, JJ.