# Smith *v.* McGuire.

*Bill in Equity to Cancel Conveyance as Mortgage of Wife's Statutory Estate.*

1. *Equitable separate estate; what words create in deed.*—A conveyance to "the sole and proper use, benefit and behoof" of a married woman, whether these words are used in the usual granting clause, or in the *habendum*, create in her an equitable separate estate.

2. *Official acknowledgment of deed; its effect.*—The official certificate of the acknowledgment by a married woman of a conveyance passing her real estate, is a part of the conveyance and necessary to its validity; and, though it is not conclusive, the evidence impeaching it must be clear and convincing.

3. *Same; what evidence not sufficient to impeach.*—When the testimony relied on to impeach the certificate is based on the fraud and duress of the husband in procuring the wife's signature and the evidence of such fraud and duress proceeds from the husband and wife only, their credibility is affected by their interest; and when (as in this case) the testimony relates exclusively to occurrences between themselves, in the privacy of domestic life, and is uncorroborated by any other evidence, while the testimony is full and positive that the wife was informed of the contents of the conveyance, and that she voluntarily executed and acknowledged it, the evidence is not sufficient to overcome the certificate.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The appellant, Mrs. E. E. Smith, filed her bill to cancel a mortgage on a store-house and lot of land, in the city of Mobile. The property was conveyed to Mrs. Smith in 1866, and the *habendum* clause of the deed uses the following words: "to have and to hold," &c., "to the sole and proper use, benefit and behoof of the said" &c.

Her husband, J. E. Smith, furnished the money to buy the property, but it was conveyed by his vendor to appellant. The husband becoming embarrassed in business and wishing to raise money on this property, authorized his brother, G. W. Smith, to negotiate the loan for him; the latter applied to Miller & Co., of Mobile, for a loan and proposed to secure it by a mortgage on the property, but this was refused. At the suggestion of T. P. Miller an absolute deed to the property was made by appellant and her husband, conveying the lot to G. W. Smith. This deed was rejected and returned to St. Louis, Mo., (where appellant and her husband resided), because it was not executed in the presence of two witnesses and was not properly acknowledged. A second deed was prepared and sent to J. E. Smith, which was witnessed and acknowledged. Thereupon, G. W. Smith borrowed from

appellee, McGuire, through Miller & Co., $4,000, the re-payment of which he secured by a deed of trust on this property. As soon as the loan was effected, G. W. Smith re-conveyed the property to appellant; the money received from the loan was given to J. E. Smith by G. W. Smith, and was used by the former in his business. The trustee in the deed being about to sell the property, Mrs. Smith filed this bill alleging that the property was her *statutory* separate estate; that her signature to the deed was procured by the fraud and duress of her husband; that she did not voluntarily execute it, and prayed that it might be canceled as a cloud on her title.

There was no proof of fraud or duress on the part of the husband except such as arose from his own testimony and that of his wife. They both testified that the wife's signature to the deed was not voluntary; that she refused to sign it until her husband threatened to kill her if she did not sign it; that she at last signed it for fear of losing her life; the husband also testified that he procured his wife's signature to the trust deed by threatening to kill her if she refused; he testified further, that he represented to her that he could soon pay off the mortgage on the property, and that as soon as a loan could be effected the property would be re-conveyed to her. The testimony of the notary, who took the acknowledgment, as well as that of his clerk, was that Mrs. Smith and her husband came to his office to acknowledge the deed, and that their son, who accompanied them, was called in as a witness to the deed and signed his name thereto as such. They also testified that they saw nothing like duress on the part of the husband, and that Mrs. Smith assented to the question or statement that she voluntarily executed the conveyance.

The Chancellor dismissed the bill, and his decree is assigned as error.

TAYLOR & MACARTNEY, and JAMES BOND, for appellant. 1. The property was the statutory separate estate of Mrs. E. E. Smith. The Supreme Court of the United States in the case of *Lippincott v. Mitchell*, 4th Otto, 767, decided that the precise words used in this deed, viz: "to her sole and proper use, benefit and behoof," did not exclude the marital rights of the husband, and the wife held a statutory separate estate. The intent to exclude the husband's rights must be expressed in clear terms.—*McMillan v. Peacock*, 57 Ala. 127; *Short v. Battle*, 52 Ala. 456; *Johnson v. Johnson*, 32 Ala. 637; *Huckabee v. Andrews*, 34 Ala. 646. In construing words of similar import, this court has decided that they did not have the

[Smith v. McGuire.]

effect of creating an equitable separate estate.—*Connor v. Williams*, 47 Ala. 133 ; 39 Ala. 619.

These words once answered an important purpose in the *habendum* of a deed. This clause of a deed Chancellor Kent declared had degenerated into "a mere useless form."—4 Kent's Com. 569 ; 2 Bl. Com. 298 ; Shep. Touchstone, 98 ; 2 Coke Lit. 283-4.

The deed to G. W. Smith and the mortgage by him to McGuire were merely parts of a device to obtain a loan on the wife's statutory estate for the husband's benefit, and are void.— *Williams v. Bass*, 57 Ala. 487 ; *Connor v. Williams*, 57 Ala. 131.

2. The deed of Mrs. Smith to G. W. Smith was procured by the fraud and by duress of her husband ; an acknowledgment obtained by force, fear or compulsion passes no title.— 30 Ala. 338 ; 1 Waite, 85 ; 6 Waite, 661 ; 13 Mass. 371 ; 18 Md. 319 ; *Schrader v. Decker*, 9 Penn. St. 14.

OVERALL & BESTOR, for the appellee.—The words "for her sole and proper use, benefit and behoof," which are found in the *habendum* of the deed to Mrs. Smith, created in her an equitable séparate estate which she could bind for her husband's debt.—*Miller v. Voss, Taylor & Co.*, 63 Ala.; *Continental Insurance Co. v. Webb*, 54 Ala. 131 ; *Anderson v. Hooks*, 11 Ala. 953. The decision in *Lippincott v. Mitchell*, 4 Otto, 767, is opposed to the decisions of this court, and the rules of real property in this State are settled by the decisions of our own court.

2. "In all cases the reliance of the purchaser is upon the record, and when that discloses an unimpeachable title he receives the protection of the law as against unknown and latent defects."—*Carpenter v. Longan*, 16 Wall. 276 ; 1 Jones on Mortgages, 549.

BRICKELL, C. J.—1. Through a long line of decisions, reaching far back in the past, it has been settled that the words of this conveyance, "to the sole and proper use, benefit and behoof," when found in a conveyance as descriptive or definitive of the quality of the estate conferred thereby on a married woman, whether found in the usual granting or in the *habendum* clause, create in her an equitable separate estate, and of themselves, unless otherwise expressly limited, exclude the marital rights of the husband.—*Miller v. Voss*, 62 Ala. 122. These decisions have grown into land marks of property—have become elements and of the essence of titles to real estate, and without producing insecurity, and inviting litigation, they can not be questioned. We forbear all dis-

VOL. LXVII.

[Smith v. McGuire.]

cussion of the question they involve, and unless we were willing to unsettle the titles resting, and acquired in reliance upon them, can not now depart from them.

2. The official certificate of the acknowledgment by a married woman, of the execution of a conveyance passing her real estate, or the attestation of such conveyance by witnesses, form parts of the conveyance, and are indispensable to its validity. To the one or the other, as it may be found indorsed, or expressed on the face of the deed, the purchaser must look, to ascertain whether title has passed. The official certificate is not conclusive evidence of the facts recited in it. The force and effect accorded to a fine at common law, for which the certificate is usually said to be a substitute, can not be accorded to it. In Sheppard's Touchstone, 9, it is said, and such is the usual language of the ancient authorities : "if there be any woman that hath a husband, that doth join with her husband in the conveyance, the judges or commissioners must take care that they do examine her whether she be willing, and do part with her right in the land willingly, or by compulsion of her husband, yet hath she no way to relieve herself from it when it is done." A fine was a judicial proceeding of more solemnity and dignity than the acknowledgment of execution by a married woman, authorized by our statutes, which may be taken and certified by the most inferior judicial officers, and also by mere ministerial officers. We can not but be aware that in practice it is often regarded more as matter of form than of substance, and often all inquiry into the facts beyond that of mere signing the conveyance, is dispensed with ; or if inquiry is made, it is in the presence of the husband, and so carelessly conducted that the willingness of the wife to join in the conveyance is taken for granted, rather than ascertained. The necessities of justice, the prevention of the deprivation of the wife of her estate, by the negligence of the officers of the law, or by their fraud, must compel an inquiry whether the certificate speaks the truth—whether the wife has acted freely and voluntarily, or in the transaction was subjected to the duress of the husband, or was the victim of fraud.—*Michener v. Cavender*, 38 Penn. St. 334 ; *Schroeder v. Dicker*, 9 ; *Ib.* 14. As the certificate forms part of the deed—is essential to its validity, and purchasers are invited to look to and rely upon it, all will admit that the evidence impeaching it, ought to be clear, convincing, and conclusive, reaching a high degree of certainty, leaving upon the mind no fair, just doubts.—*Barrett v. Proskauer*, 62 Ala. 486. Otherwise, there would be the most painful uncertainty and insecurity in regard to the titles to a large, if not the larger, part of the real estate of

[Smith v. McGuire.]

the State which is, and has been for years past the subject of individual alienation. When the testimony proving the fraud or duress, as in the case before us, proceeds from husband and wife only, their credibility is affected by their interest. The statute renders them competent witnesses, but it does not remove, or undertake to remove, the considerations affecting their credibility, arising from their relation, and their interest in the issue, which the wife forms. If the conveyance is annulled, the wife is restored to her title, and the husband to an enjoyment with her of the estate, and the contingent estate which may accrue if he survives her—prejudice or bias, arising from the relationship of the witness to the parties or to the matter in controversy, though not disqualifying, was at common law, and is now a circumstance affecting credibility. The common law rule, excluding the witness who had a direct, immediate interest in the event of the suit, whose interest conflicted with his duty, and the rule permitting his bias to be shown to affect his credibility, were founded on the known frailties of human nature, not less to-day, than when the rule of exclusion was rigidly enforced. The credibility of a witness is also affected more or less by the circumstances under which he testified, and by the consistency of his evidence, with other evidence which must be accepted as true. Here is a husband once of ability to give the wife the property in controversy, without embarrassing his active business operations, or impairing the rights of creditors. He is reduced to insolvency, and the property is about to be taken for the payment of his debts, and must be, unless by his own oath and that of his wife, fraud and threats of violence to her, compelling her into the conveyance, shall be openly confessed. Yet, when the conveyance was executed, when it was acknowledged and certified, there was not a fact or circumstance indicating that the wife was not acting freely and intelligently, and there are more affirmative facts indicating her full knowledge, and unbiased volition, than generally attend such transactions. Witnesses to the execution of the deed being desired, they call their own son as one of them, and he attests in ignorance that the shame of his father and the oppression of his mother are concealed in the act, he could hereafter, and would be compelled to testify was free, voluntary, and intelligent. A former deed of the premises had been executed for the same purposes as this conveyance, but not in the form prescribed by the statutes. Not answering the purposes, they were advised it was necessary to execute the present conveyance, attested by witnesses, and properly acknowledged before an officer having authority to take and certify the acknowledg-

[Hild v. The State of Alabama.]

ment of conveyances. If the former conveyance was freely and voluntarily executed, it would be a strong circumstance in support of the present conveyance, as would coercion in the execution of that conveyance cast suspicion upon the present. Yet these witnesses are silent in reference to the former, contenting themselves with impeachment of the present conveyance. It may be the husband and wife testify truthfully ; and he is and has been the false husband, and vile tyrant he confesses himself, but the security of the titles to real estate, bearing evidence of validity the law prescribes, requires that they should not be disturbed without corroborating evidence, proceeding from disinterested witnesses, or some fact or circumstance in corroboration attending the transaction. The evidence of the notary and his clerk, is full, that the wife was informed of the contents of the conveyance, voluntarily executed, and acknowledged the execution. In the absence of a fact in corroboration of the evidence of husband and wife, the official certificate ought not to be overturned.—*Miller v. Marx*, 55 Ala. 322. The evidence which renders it nugatory and void, converting the conveyance into mere waste paper, should not be beclouded with circumstances of suspicion, or if it is, ought to be corroborated. Especially is this true when the evidence in impeachment proceeds only from the husband and wife, refers only to occurrences between them in the privacy of domestic life, is easily fabricated and almost impossible of contradiction.

Affirmed.