WILLIAM S. SPRAKER, Individually and as Executor, etc., of HANNAH M. SPRAKER, Deceased, and Others, Plaintiffs, *v.* CHARLES J. SPRAKER and Another, Defendants.

Supreme Court, Herkimer County, August 18, 1933.

*Robert F. Livingston,* for the plaintiff.

*Bronner & Ward [Edmund A. McCarthy* of counsel], for the defendants.

DOWLING, J. Hannah M. Spraker died at the city of Little Falls, N. Y, March 7, 1932, leaving her surviving William S. Spraker and Charles J. Spraker, sons, and Marie T. Spraker and Francis Spraker, grandchildren of Albert Spraker, a deceased son. Hannah M. Spraker was eighty-four years of age at her death.

On and for many years prior to March 18, 1931, Hannah M. Spraker was the owner of the real property described in the complaint. On that date she conveyed said property to the defendants Charles Spraker and Rena Spraker " in consideration of One Dollar ($1.00) lawful money of the United States, and other good and valuable consideration paid by the parties of the second part," by an instrument in writing signed by her and purporting to have been acknowledged before Thomas R. G. Waldron, notary public. This instrument was delivered to the defendants immediately after Mrs. Spraker and the notary had signed their names thereto and was placed on record in Herkimer county clerk's office, March 19, 1931, at nine-fifteen A. M. At the time Mrs. Spraker signed such instrument, and for several years prior thereto, the defendants occupied the premises described therein, as tenants, and Mrs. Spraker made her home with them. She had also lived with her son, William S. Spraker, of Little Falls, for many years before taking up her residence with the defendants.

On January 17, 1914, Hannah M. Spraker executed a will which contained the following clause:

" Second. I direct all the residue and remainder of my property to be divided into three equal shares or portions, and I give one of said equal shares to my son, William S. Spraker, and one of said equal shares to my son, Charles J. Spraker, and one of said equal shares to my grandchildren Mary T. Spraker and Francis L. Spraker. In case my son, William S. Spraker dies before I do, then his said share is to go to his children, and in case my said son, Charles J. Spraker dies before I do then his share is to go to his children."

This will was probated in the Surrogate's Court of the county of Herkimer June 20, 1932, without objection on the part of the defendants. William S. Spraker qualified as one of the executors of said will.

Plaintiffs instituted this action February 22, 1933, to set aside said conveyance upon the grounds that, at the time Hannah M. Spraker signed her name to the same, she was incompetent and that the defendants procured said deed through fraud, deceit, coercion and plaintiffs ask to be declared the owners of two-thirds of said property and for an accounting of rents and profits, etc. Defendants interposed an answer admitting certain allegations of the complaint and, as a defense, allege that Hannah M. Spraker, for a good and valuable consideration, sold and conveyed the premises to them by deed dated March 18, 1931, and duly recorded in Herkimer county clerk's office, and that, by virtue thereof, the defendants entered into and took possession of the premises and of the whole thereof.

Upon the trial much evidence was introduced by the litigants bearing upon the mental condition of Hannah M. Spraker when she executed said deed. At the close of the case the court decided that Hannah M. Spraker was competent to devise her property at the time she signed the said deed and that she was under no restraint or coercion at that time.

During the course of the trial the defendants called Thomas R. G. Waldron as a witness in their behalf. Mr. Waldron's name appears as the notary upon said deed. He testified that he had known Hannah M. Spraker for many years, having lived in her neighborhood and further " and at the time Mr. Spraker told me when he came up that he had a little job for me to do and handed me this deed. I glanced it over and I read it just about one line of it and I took it like that and I says, Mrs. Spraker, I says, do you know what this paper contains? And she says: ' Yes, I do.' I says, alright, and I put it over like this and, now I says, sign your name right here then. And she signed her name  *  *  * and when she got through with it, it took her about maybe a minute, I will not say that, I says to her, look it over. I says, now Mrs. Spraker, I says, raise your right hand. She raised her right hand. I says, do you swear this is the truth that you have got on this paper and nothing but the truth, so help you God. And she says, ' Yes.' So I signed my name and she took the paper and handed it to Charles and he laid it on  *  *  * a dresser and Mrs. Spraker at the time says, ' Don't forget.' " Mr. Waldron further testified that he had disclosed everything that Mrs. Spraker said and everything that was done as far as he could remember. He further testified, on examination by the court: " Q. Did you ask her if she acknowledged the execution of the deed? A. I just asked her to swear to it, that is all. Q. You remember the words you used? A. I asked her if she swore this to be the truth and nothing but the truth according to her knowledge and belief. Q. Did you read the certificate that you signed on the back of the deed? A. You mean the 18th of March, 1931? Q. Yes? A. No, sir. Q. Did you ever take an acknowledgment of a deed before? A. I don't know. I don't think I have. Not that I remember. I don't think I did."

Upon the completion of the testimony of Mr. Waldron, the plaintiffs, without objection, amended their complaint, alleging the invalidity of the deed and its ineffectiveness for the reason that it was not properly acknowledged or witnessed, etc., and asked that it be set aside on that ground. The court reserved decision and the question of its validity is here for determination.

"An instrument is not 'duly acknowledged' unless there is not only the oral acknowledgment but the written certificate also, as required by the statutes regulating the subject." (*Rogers* v. *Pell*, 154 N. Y. 518, 529; *Matter of Passero & Sons, Inc.*, 237 App. Div. 638, 639.) If the testimony of the notary be accepted, the grantor did not acknowledge the execution of the deed.

As between grantor and grantee an unacknowledged deed is valid and transfers title as against all persons except purchasers and incumbrancers. (*Strough* v. *Wilder*, 49 Hun, 408.) "It follows that although a subsequent grantee has actual notice of a prior unacknowledged and unattested deed, it is invalid as to such person." (*Rochester Poster Advertising Co., Inc.*, v. *Smithers*, 130 Misc. 676, 678; *City of New York* v. *N. Y. & S. B. Ferry & S. T. Co.*, 231 N. Y. 18, 25.) A devisee of real property under a will is a purchaser. (Real Prop. Law, § 290, subd. 2; 1 R. S. [1829] part II, chap. IV, § 37, p. 762; *Stamm* v. *Bostwick*, 122 N. Y. 48, 51.)

Section 306 of the Real Property Law provides that "a person taking the acknowledgment or proof of a conveyance must endorse thereupon or attach thereto, a certificate signed by himself, stating all the matters required to be done, known, or proved on the taking of such acknowledgment or proof." The certificate attached to defendants' deed is in compliance with the statute.

Section 291 of the Real Property Law provides: "A conveyance of real property, within the State, and being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated."

Section 292 of the Real Property Law provides: "Except as otherwise provided by this article, such acknowledgment can be made only by the person who executed the conveyance."

Section 298 of the Real Property Law provides that an acknowledgment or proof of a conveyance of real property within the State may be made before a notary public within the county where he is authorized to perform official duties.

That Thomas R. G. Waldron was a notary public, qualified to take acknowledgments to conveyances of real property in the county of Herkimer, is not disputed. Plaintiffs contend that he did not perform his duties as notary public and that the certificate which he signed upon the deed in question was, in fact, false and, in support of this contention, they cite Mr. Waldron's testimony as to what occurred when Mrs. Spraker signed said deed.

The decision of the case turns upon the weight to be given the testimony of Mr. Waldron in respect to what occurred when Mrs. Spraker signed said deed.

Subdivisions 1 and 3 of section 384 of the Civil Practice Act provide as follows:

" 1. A conveyance, acknowledged or proved, and certified, in the manner prescribed by law, to entitle it to be recorded in the county where it is offered, *is evidence* without further proof thereof."

" 3. The certificate of the acknowledgment, or of the proof of a conveyance, or the record, or the transcript of the record, of such a conveyance, *is not conclusive;* and it may be rebutted, and the effect thereof may be contested, by a party affected thereby." (Italics ours.)

Immediately arises the question as to whether or not the officer taking an acknowledgment of a conveyance is a competent witness to impeach his certificate attached to such conveyance. There is a diversity of opinion in the various jurisdictions upon this question. (*Mutual Life Ins. Co.* v. *Corey,* 135 N. Y. 326, 334; 1 Devlin Real Estate [3d ed.], § 528, p. 967, and cases cited.) In this jurisdiction the rule seems to be that the officer taking the acknowledgment is competent to impeach his own certificate. (*Borst* v. *Empie,* 5 N. Y. 33, 37; *Kranichfelt* v. *Slattery,* 12 Misc. 96.) This rule is based upon the theory that the taking and certifying of an acknowledgment is a ministerial and not a judicial act. (*Albany County Savings Bank* v. *McCarty,* 149 N. Y. 71, 82.) The above sections of the Civil Practice Act make the certificate evidence of what it contains but not conclusive evidence, thereby indicating that its validity may be questioned. In the *Albany County Savings Bank Case* (*supra*), in discussing a certificate of acknowledgment, the court said (at pp. 82 and 83): " As an instrument ' certified in the manner prescribed by law,' is made ' evidence ' by statute, ' without further proof thereof,' a reasonable construction requires that the statements properly appearing in the certificate should be regarded *as evidence of the facts stated,* including the personal appearance of the party, the recognition of the signature as his, and the acknowledgment of execution. Adequate force to the word ' evidence,' as used in section 935,* can be given in no other way. ' Evidence without further proof ' indicates that the facts certified are proof *per se.* Thus the words of the certificate become evidence of what they import and acquire probative force by command of the statute.

" The officer, by a solemn official act, certifies to the acts and declarations of the person appearing before him, and those acts and declarations are thereby *stamped with the character of evidence,* tending to establish whatever those acts and declarations would establish if proved by oral testimony in a court of justice. We think that, as between the parties, a certificate of acknowledgment,

---

* Code Civ. Proc. § 935.

when read in evidence, makes out a *prima facie* case as strong as if the facts certified had been duly sworn to in open court by a witness, apparently disinterested and worthy of belief. The legal presumption of the proper performance of official duty by a public officer requires that this effect should be given it. (*Downing* v. *Rugar*, 21 Wend. 178.) While the evidence is not conclusive, as the statute provides that ' it may be rebutted and the effect thereof contested by a party affected thereby,' it is of such a character as, standing alone, to send a case to the jury, so that they may decide between the probative force of the certificate, supported by the presumption that it states the truth, on the one hand, and the evidence produced in rebuttal, whatever it may be, on the other."

In *Pierce* v. *Feagans* (39 Fed. 587, 592) it was held that the evidence to impeach a certificate of acknowledgment must be " clear, cogent and convincing; " quoting from *Rust* v. *Goff* (94 Mo. 511, 519; 7 S. W. 418), and in *Smith* v. *McGuire* (67 Ala. 34) it was held that such evidence must be " clear, convincing and conclusive, reaching a high degree of certainty, leaving upon the mind no fair, just doubts."

True, defendants called the notary and vouched for his credibility. The testimony of the notary is not corroborated in any manner. The certificate is made evidence under the statute. It should, therefore, be entitled to as much, if not more, weight than the evidence of the officer who executed it, when offered to impeach its validity. If courts accept the uncorroborated testimony of officers taking acknowledgments to deeds to impeach their certificates, titles to real property would indeed be insecure. Against the solemn certificate executed by the notary herein, his recollection at this late date, should not prevail.

" The burden of proving want of due execution of an instrument admittedly signed, and bearing a certificate of acknowledgment admittedly in due form is upon the party attacking." (2 Abb. Tr. Ev. [4th ed.] 928.)

Plaintiffs have failed to establish, by a fair preponderance of evidence, that the deed in question was not properly acknowledged as required by statute. Defendants are, therefore, entitled to judgment upon the merits dismissing the complaint, with costs.

Entry of judgment is directed accordingly.