In the Matter of the Estate of NATHAN M. GOODMAN, Deceased. THEODORE J. ROSENBERG et al., as Executors of ROSE GOODMAN, Deceased, Appellants; HERMAN E. GOODMAN, Individually and as Executor of NATHAN M. GOODMAN, Deceased, et al., Respondents.

First Department, November 27, 1956.

*Albert Cohn* of counsel (*Samuel Lawrence Brennglass* and *Morris Henry Frank* with him on the brief; *Steckler, Frank & Gutman,* attorneys), for appellants.

*Fowler Hamilton* of counsel (*Cleary, Gottlieb, Friendly & Hamilton, Manuel Tancer* and *Watt H. Denison, Jr.,* with him on the brief), for respondents.

BREITEL, J. The executors of a deceased, surviving widow, who had exchanged waivers of rights of election in their respective estates with her affianced husband, assert that the widow's waiver, upon which the estate of the deceased husband relies, is invalid for lack of due acknowledgment. After trial before the Surrogate, the waiver was sustained, and it was held, that the widow had had no right of election in the estate of her deceased husband. The decree should be affirmed.

The husband and wife, both of whom are now dead, were planning to enter into what was a second marriage for each. Each was of mature years. Each was well endowed with this world's goods. The husband was a lawyer. The wife was an active business woman. At the husband's suggestion, before the marriage, each signed a waiver of right of election in the estate of the other. The husband's waiver has never been questioned, but, of course, it never became material, because the husband predeceased the wife, although she did not survive him for long.

The issue in this case is a technical one, albeit a substantial technical one. The claim is that when the notary public took the acknowledgment, concededly an essential under the statute (Decedent Estate Law, § 18, subd. 9), the wife did not acknowledge the instrument to be hers in his presence. There is no dispute as to the genuineness of the signature. There is no dispute that the wife knew what she was signing. There is no dispute that the paper was delivered. There is no dispute that the notary public executed a certificate of acknowledgment.

The notary public was a bank clerk employed in the bank in which the wife's corporate business and the wife had their bank accounts. The wife, who died before the trial, had testified in a deposition before trial that after she signed the waiver she left it on a dresser top. The husband is supposed to have taken it before the two left for the theater. She said she did not know of her own knowledge what happened to it thereafter. There were extrajudicial statements obtained from the notary public, prior to the trial, by the wife's representatives, that an employee of the wife's corporate business, who was known to him, had brought the waiver to him for acknowledgment. The notary public said further, in his written statement, that knowing the

signature, and checking it against the signature card in the bank, and knowing the emissary who brought the waiver to him, he executed the certificate of acknowledgment. Incidentally, he gave several other written statements, some of which were to the effect that the wife was in his presence when she acknowledged execution of the instrument, and others that she was not. Upon the trial, he testified unequivocally — although uncomfortably when confronted with his prior statements — that the wife had duly acknowledged the instrument in his physical presence when he executed the certificate of acknowledgment.

The testimonial, as distinguished from the documentary, proof in the case boils down to the notary public's affirmative testimony, his prior inconsistent statements — as well as prior consistent statements — and the deceased widow's deposition to the effect that she had not appeared before the notary public when the certificate of acknowledgment was executed.

It requires no great sophistication to recognize that the witnesses, both dead and alive, were testifying under strong motivations of interest or the embarrassments of prior or present prevarications. Indeed, the widow, too, had her difficulties. In her deposition, she first testified that she did not know that her husband-to-be had executed and delivered to her a waiver of his right of election. Later, on another day, she admitted it and corrected her testimony.

Before discussing the applicable principles of law, no emphasis is great enough to mark the fact that the authentication of an otherwise genuine document by a notary public is not to be lightly upset, especially in the absence of fraud, duress, undue influence, or their equivalent. Not only is there an absence of fraud or undue influence in procuring the authentication of the document in this case, but it is apparent that the document carried out the wife's part of a mutual undertaking with her husband, fully performed on his part. This belated attempt at impeachment, in the light of the proof offered by appellants in contradicting the notary public, namely, that the wife's son and executor delivered the document to the wife's employee to be authenticated by the notary public, suggests the application of principles of estoppel.*

Section 18 of the Decedent Estate Law requires that a waiver to be effective must be duly acknowledged. It has been held that such an acknowledgment is a substantial requirement which is

---

* If, in fact, the acknowledgment was obtained by the party who would now repudiate it, there may be an estoppel. (*Mutual Life Ins. Co.* v. *Corey,* 135 N. Y. 326.)

not satisfied merely by proof of genuine and knowing signature. (*Matter of Howland,* 284 App. Div. 306.)

Acknowledgment must be that required of a conveyance to be recorded. Section 384 of the Civil Practice Act provides that a certificate of acknowledgment makes the document thus acknowledged *evidence* without further proof. It does not say that it is a presumption. The statute goes on to provide that the certificate is not conclusive and that it may be rebutted.

The legislative history is clear. Prior to 1813 there was no statute characterizing the evidentiary effect of a certificate of acknowledgment to a document. There had been great unsettlement in titles to real property. As a consequence, there apparently had developed a view that certificates of acknowledgment were entitled to conclusive effect. At this point, it was held that it was unjust to give conclusive effect to a certificate of acknowledgment. It was recognized that the certificate was entitled to evidentiary force, but that it could be rebutted by contrary proof. (*Jackson* v. *Schoonmaker,* 4 Johns. 161.) In 1813, for the first time, a statute was adopted. It merely provided, however, that the certificate was entitled to evidentiary effect. (Rev. Law of N. Y. [1813], p. 370, § 5.) Later, the revisers took note of the *Jackson* case and made further revision in the statute to provide that the certificate of acknowledgment not only should have evidentiary effect, but should not be conclusive and might be rebutted by contrary proof. (Rev. Stat. of N. Y. [1829], part II, ch. 3, § 17; Rev. Stat. of N. Y. [2d ed. 1836], vol. 3, p. 606.) By section 9 of chapter 271 of the Laws of 1833 the same rule was accorded statutory codification with respect to acknowledged instruments applying to other than real property titles. These provisions were carried forward through the Code of Civil Procedure (§§ 935-937), into the present Civil Practice Act (§§ 384, 386). In sum, the purpose of the legislation, and its course, was to preclude conclusive effect to the certificate of acknowledgment, but never to detract from its status as evidence, having continuing probative value even in the face of contrary proof.

The decisional history of the rule is equally clear. There came a time when the argument was made, like that made in this case, that the statutory provision with regard to acknowledgments was a species of presumption limited in effect to that of shifting the burden of proof. The Court of Appeals, in language as clear as it is strong, rejected this contention. Said the court: " A reasonable construction requires that the statements properly appearing in the certificate should be regarded as evidence of

the facts stated, including the personal appearance of the party, the recognition of the signature as his, and the acknowledgment of execution. Adequate force to the word ' evidence ' as used in section 935, can be given in no other way. ' Evidence without further proof ' indicates that the facts certified are proof *per se*. Thus the words of the certificate become evidence of what they import and acquire probative force by command of the statute ''. (*Albany County Sav. Bank* v. *McCarty,* 149 N. Y. 71, 82-83.) The court went on further to point out that the weight and value attached to the certificate survive contrary proof and were sufficient to send a case to the jury so that it might decide between the probative force of the certificate and the evidence produced in rebuttal. The rule has thereafter been uniformly followed, both with respect to conveyances in real property and other acknowledged documents (see, e.g., *Rogers* v. *Pell,* 154 N. Y. 518; *Rock* v. *Rock,* 195 App. Div. 59; *Spraker* v. *Spraker,* 152 Misc. 867; *Hedger* v. *Reynolds,* 216 F. 2d 202).

Consequently, the effect of the certificate of acknowledgment was to provide evidence that survived any contrary proof. It was available to the trier of the facts for purposes of credit, despite contrary proof if not believed, and even if such proof consisted of impeachment by the one who himself executed the certificate of acknowledgment. (*Rock* v. *Rock* [195 App. Div. 59, 63, *supra*], holding that the *prima facie* evidence of the certificate continues to have probative value, to be weighed against contrary proof by the trier of the facts; but also stating that the contrary proof must be '' more than a bare preponderance of the evidence '' and suggesting that the burden must be supported by testimony from disinterested witnesses and to a clear and convincing degree so as to amount to a moral certainty; see, also, *Spraker* v. *Spraker* [152 Misc. 867], holding that the contrary proof must be established through disinterested witnesses, must be clear and convincing, and that impeachment by the notary public himself was insufficient in the absence of corroboration.)

Appellants, executors for the deceased widow, have urged a number of propositions with respect to a variety of presumptions that are of different character, as if presumptions were of one kind. There are, of course, presumptions which do not survive the presentation of affirmative or negative proof of the fact to be proven. Such, for example, too, are the cases of *People ex rel. Wallington Apts.* v. *Miller* (288 N. Y. 31) and *Matter of Magna* v. *Harris Co.* (258 N. Y. 82), in which there were involved particular limited presumptions, which disappear

upon the presentation of affirmative or negative proof with respect to the fact to be proven. The difficulty which the words and the concept of " presumption " can engender is great, unless there is careful analysis. This is explained with great clarity and authority in *Wellisch* v. *John Hancock Mut. Life Ins. Co.* (293 N. Y. 178, 184), and hardly requires restatement.

Hence, in this case, by the language of the statute, by the legislative history, and by the controlling decisions of the Court of Appeals, a certificate of acknowledgment under sections 384 and 386 of the Civil Practice Act gives not merely a presumption, but provides evidence itself, sufficient to take the case to the trier of the facts, notwithstanding contrary proof.

Here, in the matter at hand, there is the certificate of acknowledgment itself, perhaps, in this background, the most reliable evidence. There is then the testimony of the notary public. His prior inconsistent statements are not available as evidence-in-chief. (*Murphy* v. *Peterson Cipher Code Corp.*, 303 N. Y. 912; Richardson on Evidence [8th ed.], § 522.) And then there is the testimony of the surviving widow who, in her deposition, testified to the contrary.

Consequently, the Surrogate was warranted, as this court is warranted, in holding that the evidence of due and proper execution of the waiver was not overcome in this case by clear and convincing proof.

While it is not necessary for us to hold or to say more, some comment in support of the Surrogate's decision on the facts is in order. The only evidence that could be treated as affirmative evidence against due authentication was the testimony by deposition of the widow. The Surrogate was justified in rejecting this testimony, and we reject it. Her testimony, apart from being interested, reveals sufficient departures from the truth and the credible to be deemed unreliable.

The other testimony relied upon by appellants, namely, that of two lawyers then associated with the attorneys for appellants, cannot be considered as affirmative evidence against authentication, but only as evidence tending to impeach the testimony of the notary that the document was duly authenticated. Suffice it to say that this evidence of prior inconsistent statements did not require a rejection of the notary's affirmative evidence. We may go further, however, and observe that if the testimony of these lawyers were available as evidence-in-chief and were to be fully accepted it would compel the conclusion that the wife's son, if not the wife, had, at very least, procured the authentication under circumstances which suggest estoppel.

564

Indeed, if the rule in the *Albany County Sav. Bank* case (149 N. Y. 71, *supra*), followed in *Rock* v. *Rock* (195 App. Div. 59, *supra*) and *Spraker* v. *Spraker* (152 Misc. 867, *supra*), be applied to this case, and it would seem that it should, had the Surrogate found other than he did, the decree would have to be reversed as a matter of law. For clearly, there is neither clear nor convincing evidence, to a moral certainty, to upset the official act of the notary public. Nor was there evidence, let alone a preponderance of evidence, by disinterested witnesses to destroy the effect of the certificate.

Accordingly, the decree denying the deceased widow's right of election should be affirmed, on the law and on the facts, with costs to the respondents against the appellants.

FRANK, J. (dissenting). This is an appeal from a decree determining that an election to take as a surviving spouse is invalid and that the widow executed and acknowledged a valid waiver of election.

The Decedent Estate Law (§ 18, subd. 9) in part provides: "The husband or wife, during the lifetime of the other, may waive or release the right of election to take as against a particular last will * * * A waiver or release to be effective under this subdivision shall be subscribed by the maker thereof and *either acknowledged or proved in the manner required for the recording of a conveyance of real property.*" (Emphasis supplied.)

The decedent, a member of the Bar, died on November 2, 1952. Surviving him were his widow, whom he married on September 5, 1947, and his brothers and sisters. In June 1953, the widow served notice on her deceased husband's executor that she elected to take her share of the estate as in intestacy, pursuant to the Decedent Estate Law (§ 18). Thereafter she died and her executors commenced the proceeding which resulted in the decree appealed from.

Concededly the widow signed a waiver of election sometime in August, 1947, which antedated her marriage to the decedent. The dispute between the litigants is with respect to the validity of the alleged acknowledgment of the waiver. The executors of the decedent contend that it was acknowledged before a notary public on September 29, 1947. Conversely, the widow's executors assert that she never appeared before the notary and never acknowledged the waiver or her signature thereon. Although the instrument in question indicates on its face that it was intended to be signed and acknowledged prior to the marriage

of the parties, it was not acknowledged, if at all, for at least a month after that occurrence.

In 1954, Mrs. Goodman became seriously ill and an application was granted to perpetuate her testimony. Upon her examination she categorically denied ever appearing before the notary whose certificate is a part of the instrument, denied ever having seen him and denied that she had ever acknowledged the execution of the waiver to anyone. She died shortly after her testimony was taken. It is asserted by counsel for her executors that at the time the application for the perpetuation of testimony was made, they disclosed to respondents' counsel that the notary had signed a statement to the effect that the widow had not acknowledged the waiver before him.

Without detailing all the proof presented at the hearing before the Surrogate, it will suffice to point out that the petitioners called the notary presumably to testify that the widow had not acknowledged the waiver, in accordance with two statements which he had previously signed.* To the amazement of the petitioners, the notary testified that the certificate of acknowledgment was his and " [i]f I signed it, I saw her, yes, Sir. " It then developed that he had also signed two affidavits for the respondents in which he affirmed that Mrs. Goodman had acknowledged the waiver to him and attempted to explain away the contradictory statements as being made under " pressure ". Other material testimony was given by two reputable members of the Bar, who, in substance, stated that the notary had informed them that one Lucy Schoenfeld had presented the waiver to him for his certification. Lucy Schoenfeld had been an employee of a business concern in which Mrs. Goodman had an interest, but was not available as a witness at the trial because of her death prior thereto.

That the notary's testimony should have been carefully scrutinized and evaluated cannot be gainsaid. The record discloses that the learned Surrogate had some concern with respect to this vital proof, for he examined the witness to a considerable extent. Although in his opinion he made passing mention of the inconsistent testimony of the notary and of the conflicting statements that he signed, the Surrogate made no finding thereon, but held, " that the presumption of due and proper execution of the waiver, as evidenced by the certificate of acknowledgment, has not been rebutted by clear and convincing

---

* The officer taking an acknowledgment is competent to impeach his own certificate. (*Borst* v. *Empie,* 5 N. Y. 33, 37; *Spraker* v. *Spraker,* 152 Misc. 867; *Rock* v. *Rock,* 195 App. Div. 59.)

proof (*Albany County Sav. Bank* v. *McCarty,* 149 N. Y. 71) ''.

We take it from the foregoing that the Surrogate held that a presumption of regularity or validity is created by the receipt in evidence of an acknowledged waiver. We cannot accept such a determination, nor do we so interpret the case upon which the Surrogate relied. The *Albany County Sav. Bank* case holds that the certificate of acknowledgment is prima facie proof, which, if standing alone, would be sufficient. The court there suggested that it should not be overthrown upon evidence of a doubtful character, but only on proof so '' clear and convincing '' as to amount to a moral certainty. That case should be used as authority only within its frame of reference. The acknowledgment was in connection with a bond and mortgage. There is a marked distinction between the acknowledgment of deeds and mortgages which are instruments used in commerce and a waiver of the personal right of election. Moreover, that case was decided in 1896, several decades before the Decedent Estate Law granted the right of election to a surviving spouse, the intent and purpose of which will be hereinafter discussed. In *Rock* v. *Rock* (195 App. Div. 59) the Appellate Division, Third Department, in an analysis of the general rule enunciated by the Court of Appeals in *Albany County Sav. Bank* v. *McCarty* (*supra*), concluded that: '' when the judgment of the Court of Appeals is finally reached, it is said in effect, and in many other cases in so many words, that * * * a certificate of the notary [is] *prima facie* proof only, and as such takes the case to the jury '' (p. 63).

The Civil Practice Act (§ 384, subd. 3) clearly indicates that '' [t]he certificate of the acknowledgment * * * is not conclusive; and it may be rebutted, and the effect thereof may be contested, by a party affected thereby ''.

To revert to the testimony with respect to Miss Schoenfeld, if it is the fact that she presented the waiver to the notary for acknowledgment, the waiver would be invalid. While an instrument that requires acknowledgment need not be executed at the same time as it is acknowledged, it is not '' duly acknowledged '' unless in addition to the signature, there is the oral acknowledgment by the person executing it to the official who certifies that fact by a written certificate. (See *Rogers* v. *Pell,* 154 N. Y. 518, 529; *Matter of Passero & Sons,* 237 App. Div. 638, 639.)

In enacting the provisions of section 18 of the Decedent Estate Law, the Legislature (L. 1929, ch. 229, § 20) created the right of election of a surviving spouse. It expressly provided that '' such provisions shall be liberally construed '' for the designed purpose ''to increase the share of a surviving spouse in the estate

of a deceased spouse  &#42; &#42; &#42;  by an election against the terms of the will  &#42; &#42; &#42;  thus enlarging property rights of such surviving spouse ". (*Matter of Byrnes,* 260 N. Y. 465.) To fulfill the declared intent and purpose of extending the enlarged right given a surviving spouse, the right of election may be waived only by strict conformity with the provisions of the Decedent Estate Law (§ 18, subd. 9; *Matter of McGlone,* 284 N. Y. 527; *Matter of Colaci,* 288 N. Y. 158, 163).

In any event, however, the burden of establishing the waiver is upon the respondents. (*Matter of Colaci, supra,* p. 162.) Even assuming *arguendo* that we treat the acknowledgment as a presumption, it disappears when evidence to refute it is produced. (See *People ex rel. Wallington Apts. v. Miller,* 288 N. Y. 31, 33; *Matter of Magna v. Hegeman Harris Co.,* 258 N. Y. 82, 84.) Moreover, " [i]n civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions ". (*McKeon v. Van Slyck,* 223 N. Y. 392, 397; see, also, *Matter of Presender,* 285 App. Div. 109.) Thus, in the absence of a presumption that the waiver was duly acknowledged, the estate may well have failed to carry the burden placed upon it of establishing the validity of the waiver by a fair preponderance of the credible evidence.

As we view it, an evaluation of the testimony of the notary is vital for a determination as to the validity of the waiver. While this court has the authority to make findings with respect thereto, we believe that an examination of this witness by a trier of the facts will more accurately assess his credibility.

We therefore hold that the decree should be reversed and the matter remanded to the Surrogate for a new trial of the issues.

PECK, P. J., and VALENTE, J., concur with BREITEL, J.; FRANK, J., dissents and votes to reverse in opinion, in which COX, J., concurs.

Decree affirmed, with costs to the respondents against appellants.