John M. Keane, S.
This is a motion made by the petitioner for probate (the executor named in the will) to dismiss objec *164 tions to probate filed by two brothers who were the only distributees of the decedent, on the ground that they had consented to the probate by executing waivers of the issuance of citation and consents to probate. This motion is the more unusual because the objections were filed on June 28, 1968 and the waivers of the issuance of citation and consents to probate were not filed until March 18, 1969. The consent to probate was contained in the form used in this court for the waiver of the issuance of citation and consent to probate. To understand how such a situation could develop, it is necessary to recite the facts.
Walter Henri Frutiger died June 22, 1965 in Endicott, New York. He was survived by two brothers. One, Willard, lived in Endicott. The other, Ernest, lived in Coatsville, Pennsylvania, approximately 200 miles from Endicott. Ernest drove to Endicott and arrived in the evening of June 23,1965 to attend his brother’s funeral the following day.
On June 24, 1965, prior to the funeral, Ernest suggested that arrangements be made to read the will soon after the funeral. Willard made arrangements with the Endicott Trust Company, the executor named in the will and two codicils. Shortly after the funeral in midafternoon a conference was held at Endicott Trust Company. Present were Ernest D. Frutiger; Willard U. Frutiger; Roger B. Cooper, executive vice-president of the Endicott Trust Company; Warren D. Jennings, counsel for the Endicott Trust Company; and Harold R. Evans, Jr., then an associate attorney with his father-in-law, Warren D. Jennings.
The testimony concerning what occurred at that conference is completely irreconcilable. Postponing for the moment a discussion of the completely divergent testimony, it is conceded that Ernest D. Frutiger and Willard U. Frutiger each signed a form used in this court entitled, “ Waiver and Consent to Probate.” These instruments were retained by Mr. Jennings.
After the conference ended in the late afternoon, Ernest and Willard Frutiger journeyed some 10 miles to Binghamton to the office of Thomas W. Ryan, Esq., who was and still is counsel for Willard U. Frutiger. Testimony concerning that later conference was excluded by this court on the basis that it was irrelevant to the question concerning the validity of the execution of the waivers and consents to probate. On the morning of the next day, June 25, 1965, Ernest and Willard Frutiger were present in the Endicott Trust Company when a search for a will was made of the safe-deposit box of their deceased brother. At this time an inventory of the assets in the box was *165 made. Among the assets were somewhat over 3,000 .shares of IBM stock, then worth in excess of $1,000,000.
There were two codicils attached to the will. The first codicil affected only the bequests to Ernest and Willard Frutiger. The second codicil affected the interests of all residuary legatees. Therefore, all the residuary legatees became necessary parties to a probate proceeding. Eventually it developed that these residuary legatees would number over 250 people, most of whom lived in Switzerland.
On September 1, 1965, a petition was made for the appointment of a temporary administrator. On September 30, 1965, letters of temporary administration were issued to the Endicott Trust Company. Harold R Evans, Jr., testified that on September 15, 1965, when he filed the will and codicils, he attempted to file the waivers of citation and consents to probate but that they were not accepted because no probate proceeding was then pending.
After Ernest D. Frutiger went home, he consulted counsel in nearby Philadelphia. On November 17, 1965 a conference was held at the Endicott Trust Company, attended by Mr. Cooper; Mr. Evans; Willard U. Frutiger and his counsel, Mr. Ryan; and the Philadelphia counsel for Ernest D. Frutiger. When the discussion indicated that objections were being considered to the probate of the will and codicils, no one mentioned the fact that waivers of the issuance of citation and consents to probate had been .signed earlier by Ernest and Willard Frutiger.
Mr. Jennings, who had been in poor health, died the following year, on October 4, 1966. Eventually Mr. Evans concluded that the task of getting together material on the large number of parties for a probate proceeding would be unduly delayed if done by a single practitioner. In January, 1968 he retained the firm of Chernin & Gold to act as his counsel. A probate petition was filed on March 4, 1968 and a citation issued, which included the names of Ernest D. Frutiger and Willard U. Frutiger. Both were served with a copy of the citation.
Within the time granted by the court, objections to probate were filed by Ernest D. Frutiger and Willard U. Frutiger on June 28,1968. Conferences continued among the attorneys and on at least two occasions this court participated in a pretrial conference to ascertain whether the differences might be resolved. When no resolution of the differences appeared possible, a petition was made for an order framing the issues. On February 17, 1969 an order was made framing the issues for a trial.
*166 Shortly thereafter, on March 18, 1969, there were filed the two waivers of citation and consents to probate .signed on June .24, 1965 by Ernest D. Frutiger and Willard U. Frutiger. On March 21, 1969 Ernest D. Frutiger and Willard U. Frutiger were directed to show cause on April 22, 1969 why their objections should not be dismissed on the ground that they had previously consented to the probate of the will. Such is the recital of facts about which there is no dispute.
It is the position of this court that the validity of these waivers and consents,to probate must be determined primarily on the basis of what occurred at the conference on June 24, 1965. Ernest and Willard Frutiger 'contend that the instruments are invalid because (1) they were not properly acknowledged; (2) that they were fraudulently obtained; and (3) that the proponent of the will and codicils is estopped from use of said instruments because of the lapse of time between their execution and filing in this court.
It was Ernest D. Frutiger’s recollection that Mr. Cooper, the bank officer, did most of the talking at the conference; requested his waiver and consent; advised him that its execution was merely to record his presence at the conference; and presented the forms in blank for his signature. Willard U. Frutiger’s recollection was less detailed. He, too, said that Mr. Cooper did most of the talking. He understood the waiver and consent was signed so the court could permit payment of his late brother’s debts. He, too, said he signed a blank form.
Mr. Jennings, of course, is deceased. Mr. Cooper and Mr. Evans testified that Mr. Jennings brought Xerox copies of the will and codicils to the conference along with waivers of citation and consents to probate with the blanks filled out in his handwriting; that ample opportunity was given the brothers to examine the will and codicils; and finally, that Mr. Jennings requested the waivers be signed, stating, “ We need these to probate the will.”
Mr. Jennings did not take the acknowledgments but said to Mr. Evans, “Here, you notarize them.” Mr. Evans testified that he did not ask either Ernest D. Frutiger or Willard U. Frutiger if .they so acknowledged their signatures. He stated that since he had seen each sign, he believed it unnecessary to ask the oral question. He signed the certificates of acknowledgment in the usual form.
Of all instruments filed in probate proceedings, the, greatest number must certainly be waivers of the issuance of'citation and consents to prdbate. Upwards of 60% of the wills probated in this court are ¡admitted on jurisdiction acquired by these *167 instruments. Perhaps their frequent use makes it rare when the nature of the instrument is called into question. Actually, the form, as used in this court, recites that the undersigned, ‘ ‘ being of full age and a distributee of the decedent above-named, hereby personally appears in the Surrogate’s Court of Broome County, N. Y., and waives the issuing and service of a citation in this manner, and hereby consents that the Last Will and Testament of such decedent bearing the date of: be admitted to probate by the Surrogate of Broome County, N. Y., without further notice to the undersigned.”
On analysis it is clear that the instrument really consists of two parts. One is a waiver of the issuance and service of a citation and a general appearance in the proceeding. The second part is a consent to the probate without further notice. For a valid probate the portion relating to consent is unnecessary. When a citation is issued and no objections are filed, there are no consents by the persons so cited.
SCPA 401 (subd. 4) permits an appearance by an acknowledged waiver of the issuance and service of process. No mention is made in the statute that there must be a consent to the probate.
Counsel for the Frutiger brothers, in seeking to dismiss the motion, argue that the waiver and consent in each instance was not validly acknowledged. Belying on that claim, they charge that the whole instrument is void.
G-enerally an acknowledgment has nothing to do with the validity of an instrument. Its purpose is to furnish due proof of the execution of instruments affecting real property (see 1 Warren’s Weed, New York Beal Property, Acknowledgements, § 1.01). An instrument is good between parties even though defective acknowledgment prevents its recording (see 1 Warren’s Weed, New York Beal Property, Acknowledgements, § 3.10). Although it is alleged that an unacknowledged instrument cannot be filed in this court, no authority was shown to support this position.
In some instances, the statute requires acknowledgment for validity, such as the waiver of the issuance and service of citation previously mentioned (SCPA 401, subd. 4); waiver of a right of election (EPTL 5-1.1, subd. [f]); assignment of an interest in an estate (EPTL 13-2.2); a building and loan contract (Lien Law, § 22); and others. The word acknowledgment is frequently used but rarely analyzed.
An acknowledgment consists of two parts. One is the oral declaration by the person who has signed the instrument. The *168 second part is the certificate attached and executed by the one authorized to make the certificate. (See 1 Carmody-Wait 2d, New York Practice, § 5:12.) Usually this is a notary public. Understandably, there are few decisions relating to this particular area of the law. One of them is Spraker v. Spraker (152 Misc 867), where the validity of the acknowledgment was at issue.
In the Spraker case, á deed had been made in 1931 and the certificate of acknowledgment signed by a notary public. The deed was recorded the next day. After the death of the grantor, an attempt was made in 1933 .to set the deed aside. One of the grounds was a defective acknowledgment. The notary testified. He had asked the grantor questions relating to an oath rather than to an acknowledgment. His was the only testimony concerning the acknowledgment. The court pointed out that he had contemporaneously signed a certificate showing compliance with the statute relating to acknowledgments. Weighing the certificate made at the time on the one hand with the later uncorroborated testimony of the notary, the court determined that the certificate was entitled to greater weight than the uncorroborated testimony of the notary.
More time has elapsed in this particular matter than in the Spraker case. The notary, Mr. Evans, testified that he did not ask the oral question. His testimony was corroborated by both Ernest D. Frutiger and Willard U. Frutiger, both of whom had no recollection of any questions by Mr. Evans and were hard pressed to admit more than that each signature was genuine.
With a certificate of acknowledgment free from any apparent irregularity, strong evidence is required to hold the entire acknowledgment invalid. Here the testimony of the notary was corroborated, something that was lacking in the Spraker case. Accordingly this court holds the acknowledgment to be invalid. However, this has no effect on validity of the consent to probate. The contention that the whole instrument is tainted by the invalid acknowledgment is rejected.
The second reason advanced by counsel for the Frutiger brothers is that the- consent to probate was obtained through fraudulent misrepresentations. This court is not ready to accept what may be the avant garde argument that the one accused of fraud must show his freedom from it. This court believes the burden of proving fraud rests on the one claiming it. Reduced to its bare essentials, counsel for the Frutiger brothers would require the rules of the station house at the first interrogation apply whenever a will is read following death. *169 Much argument was made that no efforts were made to advise the brothers that they were entitled to counsel.
The briefs of the contestants contained numerous innuendoes that a subtle web was drawn about the elderly surviving brothers that afternoon immediately after the funeral until, like the sailors who, enticed by the soothing .strains of the Lorelei high above the Rhine, crashed into the forbidding mountain rock, .so the Frutiger brothers were conned into signing waivers and consents to probate by the suave representative of the bank.
Ignoring the innuendoes poured forth at length, there was one statement made by the attorney, Mr. Jennings, that was not accurate. It was his statement when requesting the waivers and consents that, “ We need these to probate the will.” Technically, this is not correct and a non-lawyer could well be misled. Particularly this is so when one considers the reasons which the Frutiger brothers recall for signing the waivers and consents.
The court finds that no credible evidence of any fraud on the part of the bank or its attorney was submitted by the Frutiger brothers. The rules of Miranda v. State of Arizona (384 U. S. 436) do not yet apply in this court to a conference about the will and estate of a recent decedent.
The third basis advanced by counsel for the Frutiger brothers to set aside the waivers and consents is based upon an estoppel. It is argued that, because of the lapse of time between the admitted signing of the instruments and their filing in this court, the proponent of the will is estopped from relying upon their validity. This argument is without merit. One of the essential elements of an estoppel requires a change in position in reliance upon the alleged wrongful act.
Here Ernest and Willard Frutiger have never changed their position. From the time they left the conference on June 24, 1965 until the present time it would appear that their constant goal has been to set aside the will of their late brother. Situations could exist where they might have changed their position to their detriment. No such situations exist here. Failure to show any change in position requires that the argument based upon estoppel be ignored.
After pointing out the lack of evidence to support the arguments made by the Frutiger brothers to dismiss the present motion and leave their objections outstanding, the court remains deeply troubled by the paucity of any evidence constituting a credible explanation for the virtual disappearance of the waivers and consents until almost the date of trial. According to the testimony, they were not “ rediscovered ” until the file *170 had been turned over to trial counsel for review in preparation for the trial of the probate of the will. In examining the entire file, the trial counsel found these waivers. If the waivers and consents had appeared then for the first time, the court might not be quite ,so disturbed.
The testimony of Mr. Evans indicates that he tried to file the waivers and consents on September 15, 1965 before any probate proceeding was pending in this court. He lmew then, some three months after they were executed, that they were in existence. Two months later, in November, there was at least one conference between the parties, including Philadelphia counsel for Ernest D. Frutiger, the general tenor of which indicated that objections would be filed to the will. Yet no statement was made concerning the existence of these waivers and consents. Other conferences followed with no mention of the waivers and consents.
In probate practice, every lawyer knows that when a distributee receives less than his intestate .share under a will, there is frequently a reluctance on his part to sign a waiver and consent to probate. Here, by inspection, the first codicil reduces substantially the interest given to the two brothers by the will itself. It does not always follow that distributees feel they should receive at least their intestate share. Many times they want to respect the wishes of the decedent and are perfectly willing to abide by the terms of an instrument offered as his will.
Mr. Jennings was an experienced practitioner in estate matters for many years. While much younger, Mr. Evans not only practiced his profession but also had been a trust officer in a bank. It strains the credibility of the court to believe that experienced practitioners, once having obtained waivers and consents in this particular instance, would not immediately feel that they were ‘ ‘ home free ’ ’, as far as the two people who might possibly file objections to this will. One just does not forget the existence of waivers and consents obtained at the outset of a probate proceeding when almost immediately on .the horizon appeared the possibility of a contest.
Like any agreement between parties, a waiver can by agreement be withdrawn and canceled. The conduct of the attorneys for the proponent from November, 1965, when the first conference was held attended by counsel for the brothers, during which it appeared that objections to the will were being contemplated, and all of the subsequent acts of counsel for the proponent and counsel for the Frutiger brothers, have been consistent with only one conclusion, namely, that the waivers and consents to probate were withdrawn and no longer valid *171 between the parties. When all of the conferences, proposals for settlement of differences, pretrial conferences, jurisdiction obtained by service of a citation are considered, only one conclusion can be reached. The waivers and consents .signed on June 24, 1965 were no longer valid instruments in this probate proceeding.
Therefore this court determines that the proponent, by its actions, has consented to the withdrawal of the waivers and consents to probate signed by Ernest D. Frutiger and Willard TJ. Frutiger. The motion to dismiss the objections to probate, based upon the existence of waivers of the issuance and service of citation and consents to probate, is hereby denied, without costs.